AMERICAN CAST IRON PIPE COMPANY, a corporation, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 78–1233.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1978.

Decided June 4, 1979.

Fredric Ingram of Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala. (argued), and Robert F. Childs, Jr., Birmingham, Ala., on brief, for petitioner.

Candace M. Carroll, Atty., N. L. R. B., Washington, D. C. (argued), John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on brief, for respondent.

Before STEPHENSON, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Petitioner, American Cast Iron Pipe Company (ACIPCO), appeals from the decision and order of the National Labor Relations Board, pursuant to § 10(f) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. The NLRB cross-appeals for enforcement of the order. For reversal petitioner argues that (1) the Board's finding that petitioner's Rules 27, 29 and 30, regulating the writing, making and distribution of statements by employees, violate the NLRA is unsupported by substantial evidence; (2) petitioner was denied due process at the hearing before the NLRB by the Administrative Law Judge's (ALJ) refusal to admit certain evidence; and (3) the remedial order of the Board is overly broad. For the following reasons, we affirm the decision of the NLRB and order that it be enforced.

ACIPCO is a Georgia corporation engaged in the manufacture of cast iron pipe and related products with its principal place of business in Birmingham, Alabama. The plant employs 3,200 people. Since the early

1970's about thirty percent of these employees have been black. The employees are not represented by a union, and, until sometime in the 1960's, the plant operated along racially segregated lines.

In 1964 a group of black employees formed the Committee for Equal Job Opportunity (CEJO), which is now composed of approximately thirty black employees. CEJO handles labor relations matters and employment discrimination complaints from its members. A major part of CEJO's activity is its continued support of class action employment discrimination litigation against ACIPCO, which has been in progress since 1966. *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978). CEJO supports the lawsuit by holding meetings, distributing leaflets and contributing money to secure the continuation of the case. CEJO also distributes leaflets informing the workforce about other labor related problems.

At least as early as October 1965, ACIPCO has maintained rules limiting its employees' right to distribute written matter and to make statements about any employee, the company or its products.

Between September 14, 1971, and August 17, 1976, ACIPCO noticed an increase in the flow of literature to the plant—at least thirty-three different newspapers and leaflets were found in the plant. These writings, including those authorized or distributed by CEJO, were distributed outside of the plant but were apparently carried inside. Petitioner introduced into evidence many of these publications. Some were published by CEJO; others were published by left wing or radical organizations and contained interviews with CEJO representatives. All of these publications contained exhortations against employers in general and petitioner in particular, against racism, against alleged unhealthy practices and conditions in petitioner's plant, and in favor of labor organizations' tactics. These publications also referred to the CEJO employment discrimination suit against ACIPCO.

In February, 1976, the Company, perceiving a causal connection between the influx of literature into the plant and increasing disciplinary problems, passed Rules 27, 29 and 30, which are now at issue. ACIPCO stiffened Rule 30 in August, 1976, in response to a new leaflet distributed by CEJO.[1] Rule 27 forbids distribution of any written or printed matter on company property without company permission. Rule 29 forbids false, vicious or malicious *verbal*[2] statements about the company, its employees, its products or its methods of manufacture. Rule 30, as amended in August, 1976, is similar to Rule 29 except that it forbids the *writing* or *distribution* of false, vicious or malicious statements about any employee, the company, its products or methods of manufacture.[3]

---

1. This leaflet accused ACIPCO of using a powder which, once in the production process, produced a vinyl chloride gas which causes liver cancer and silicosis. The ALJ found that while the company did receive drums which were labeled as containing vinyl chloride, the drums were mislabeled and in fact did not contain any substance which emitted vinyl chloride gas.

2. We assume petitioner, by proscribing certain "verbal" statements, intended only to proscribe oral statements. . See *Webster's Third New International Dictionary* 2542 (definition 4) (1961).

3. The petitioner's rules forbid the following:

| Rule No. | Plant Rule | First Offense | Second Offense | Third Offense |
|---|---|---|---|---|
| 27 | Distributing on Company property written or printed matter of any description not in the performance of Company business without Company permission. | 1-week layoff | Discharge | |
| 29 | Making false, vicious or malicious verbal statements concerning any employee, the Company, or its products and methods of manufacture. | Reprimand | 1-week layoff | Discharge |

On February 8, 1977, four members and officers of CEJO met with petitioner's Assistant Works Manager, Edward D. McCauley, to obtain approval as specified in Rule 27 to distribute a leaflet. The leaflet (hereinafter referred to as the February 1977 leaflet) contained the statement that "management purposely cut down on the number of blacks hired." CEJO members who were at this meeting gave different accounts as to whether McCauley ever actually characterized the pamphlet as "false." McCauley apparently did say, however, that CEJO would have a difficult time proving the above statement; that different people have different views of what is false; and he could not give CEJO permission to distribute the leaflet. Not wanting to take a chance as to whether the leaflet would later be held to be "false" and thus subject CEJO members to discharge under Rule 30, the CEJO members declined to publish the leaflet.

A complaint was then filed with the NLRB alleging that ACIPCO, by maintaining and enforcing Rules 27, 29 and 30 violated 8(a)(1) of the NLRA by "unlawfully prohibiting its employees from exercising their section 7 rights to engage in concerted activities . . . for the purposes of other mutual aid and protection." The Board found an 8(a)(1) violation and ordered ACIPCO to cease and desist from regulating its employees' distribution or solicitation efforts in nonwork areas and on nonwork time. ACIPCO appeals the Board's order and NLRB cross appeals for enforcement.

■ We note initially that decisions of the NLRB are entitled to great respect by a reviewing court. The Board's findings of fact are conclusive if supported by substantial evidence on the record as a whole. National Labor Relations (Taft-Hartley) Act § 10(f), 29 U.S.C. § 160(f) (1970); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Hale Mfg. Co.*, 570 F.2d 705, 708 (8th Cir. 1978).

### I. The Validity of Rules 27, 29 and 30

■ The Board found two defects in Rule 27: the rule was overbroad and it was enforced in a discriminatory manner. Petitioner challenges both rulings.

■ According to the Board, Rule 27 was overbroad because it prohibited, unless prior company permission was obtained, the distribution of written material in nonwork as well as work areas of the plant and on nonwork as well as work time. An employer has the right to regulate the distribution of material in his plant in working areas and on working time, but any attempt by an employer to regulate distribution of material in nonwork areas or on nonwork time is presumptively invalid. *Eastex, Inc. v. NLRB*, 437 U.S. 556, 570–76, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978); *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 803–804 n.10, 65 S.Ct. 982, 89 L.Ed. 1372 (1945). This presumption is designed to strike a balance between the "undisputed right of self-organization assured to employees under the Wagner Act and the equally undisputed right of employers to maintain discipline in their establishments." *Republic Aviation Corp. v. NLRB, supra*, 324 U.S. at 797–98, 65 S.Ct. at 985. The employer may, however, rebut this presumption of invalidity by showing "'that special circumstances make the rule necessary to maintain production or discipline.'" *Republic Aviation Corp. v. NLRB, supra*, 324 U.S. at 803–804

| Rule No. | Plant Rule | First Offense | Second Offense | Third Offense |
|---|---|---|---|---|
| 30 | Writing or distributing false, vicious, or malicious written statements about any employee, the Company, its products, or methods of manufacture. | Discharge | | |

n.10, 65 S.Ct. at 988; *see also Eastex, Inc. v. NLRB, supra,* 437 U.S. at 573 n.22, 98 S.Ct. 2505. If the employer proves "special circumstances," the rule is not automatically found valid, however. The court merely proceeds to the next step in its analysis: a balancing of the employees' interest in distributing material and the employer's interest in controlling such distribution with the rule in question. Only if the court finds that the employer's interest outweighs the employees' will the rule ultimately be found valid. *McDonnell Douglas Corp. v. NLRB,* 472 F.2d 539, 545–46 (8th Cir. 1973).

Petitioner argues that severe disciplinary problems and racial tension existing in the plant is a "special circumstance" which rebuts the presumption of Rule 27's invalidity and requires the Court to balance ACIP-CO's interest in controlling the inciting literature with Rule 27 against CEJO's interest in distributing the literature. Petitioner's argument fails on two grounds. First, petitioner has not proven that it suffers from exacerbated disciplinary problems at all. In 1976, the year the rules in question were promulgated, there were eight serious disciplinary problems, compared to two serious disciplinary problems in 1965. Given the facts that the workforce exceeds 3000, that the men work in hot, dirty and difficult conditions, that the workforce has increased by thirty to sixty men since the 1960's, and that the plant was integrated in the late 1960's, eight incidents per year is fairly minor. The second and more important flaw in petitioner's argument is that it has not proven that CEJO's literature is the cause of the few disciplinary problems it has. The only evidence petitioner presented to prove this essential causal relationship was testimony from its vice-president, Samuel Carter. Carter stated that the employees had physically fought over the literature and quoted its vituperative language in their fights. However, Carter never personally witnessed fights in which this occurred and petitioner called no witnesses who had observed them. We cannot, therefore, accept petitioner's argument that it had serious disciplinary problems which necessitated the adoption of Rule 27 and thus rebutted the presumption that Rule 27 is invalid.

The Board also found that Rule 27 was applied in a discriminatory manner because petitioner granted various groups, such as a politician, the Girl Scouts and several charity solicitors, permission to distribute literature or make collections on company property, while denying permission to CEJO. Petitioner argues that these incidents are innocuous and too isolated to show discriminatory application of Rule 27. In a six-month period petitioner apparently allowed all of the above groups to solicit orders or distribute literature while denying CEJO permission to distribute the February 1977 leaflet. Given this time frame, these incidents are not "too isolated." We do agree, however, that granting permission to the Girl Scouts and charity groups while denying permission to CEJO is fairly innocuous. *See, e. g., United Aircraft Corp. v. NLRB,* 440 F.2d 85, 96 (2d Cir. 1971); *Serv-Air, Inc. v. NLRB,* 395 F.2d 557, 560 (10th Cir.), *cert. denied,* 393 U.S. 840, 89 S.Ct. 121, 21 L.Ed.2d 112 (1968); *Lutheran Hospital of Milwaukee,* 224 N.L.R.B. 176, 181 (1976). Granting permission to a political candidate is another matter, however, for by allowing the candidate or his workers to appear and distribute literature while denying the same right to CEJO, petitioner is making available to its employees political views it favors while barring political views with which it disagrees. For this reason, we affirm the Board's ruling that Rule 27 was applied in a discriminatory manner.

■ Rules 29 and 30, taken together, bar verbal (Rule 29) or written (Rule 30) "false, vicious or malicious" statements about ACIPCO, its employees and its products or methods of manufacture, on and off company premises. The sanction for the first violation of Rule 29 is reprimand; the sanction for the first violation of Rule 30 is discharge. We agree with the Board that the major flaw in both rules is that they proscribe "false" as well as "vicious or malicious" statements.

It is well-established that, while employers may proscribe "maliciously false" statements, employers may not proscribe and punish for publication of "false" statements. *Texaco, Inc. v. NLRB*, 462 F.2d 812, 815 (3d Cir.), *cert. denied*, 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 302 (1972); *Owens-Corning Fiberglas Corp. v. NLRB*, 407 F.2d 1357, 1366 (4th Cir. 1969). Punishing employees for distributing merely "false" statements fails to define the area of permissible conduct in a manner clear to employees and thus causes employees to refrain from engaging in protected activities.

Petitioner argues that by prohibiting false statements, it is protecting itself from "disloyal" statements, which it argues, pursuant to *NLRB v. Local Union No. 1229, IBEW*, 346 U.S. 464, 472–473, 74 S.Ct. 172, 98 L.Ed. 195 (1953) and *Maryland Dry Dock Co. v. NLRB*, 183 F.2d 538, 542 (4th Cir. 1950), it has the right to do. This argument does not address the defect in Rules 29 and 30, however. These rules prohibit and punish employees severely for "false" statements about the company; the rules are not limited to disloyal false statements. If disloyalty is the problem petitioner seeks to address, it must do so directly rather than through an impermissibly broad rule. For these reasons we affirm the Board's ruling that Rules 29 and 30 are impermissibly broad and therefore invalid.

## II.  The Evidentiary Rulings

Petitioner argues that it was denied due process by the ALJ's evidentiary rulings which kept out evidence favorable to it and thereby prevented a fair trial. The evidentiary points at issue are (1) a "limitation" of petitioner's attempt to cross-examine a witness, (2) the ALJ's decision that petitioner must introduce certain CEJO publications as a "bulk offer of proof" rather than introducing them individually, and (3) the ALJ's refusal to allow Exhibits 4, 22 and 23 into evidence. We affirm the ALJ on all points and therefore find that petitioner was not denied a fair trial by the exclusion of this evidence.

While it is true the ALJ limited the cross-examination by petitioner of Jesse Blackmon, one of petitioner's employees, the ALJ did so because the questions were outside the scope of the direct examination. In making this ruling, the ALJ informed petitioner's counsel that he could call Mr. Blackmon as his own witness if he wished to pursue this line of questioning. Counsel never called Mr. Blackmon and cannot now claim the ALJ is to blame for the lack of evidence in the record on this point.

The second evidentiary ruling contested by petitioner is that Exhibits 5 to 13 and 14 to 21 were "relegated to an 'offer of proof' that the material was maliciously false and scandalous and was accepted into evidence only as background." Exhibits 5–13 are CEJO publications; exhibits 14–21 are pamphlets published by other groups which contain interviews with CEJO members. All of these exhibits were found in the plant. As far as we can decipher, petitioner is upset that ALJ required the above publications to be introduced as a group with the stipulation that vice-president Carter would testify that, in his opinion, certain statements in each document were false or maliciously false. It appears petitioner wanted the documents introduced individually with Carter's accompanying testimony as to what particular statement in each publication was false and why.

Petitioner has complained that his inability to introduce these exhibits individually prejudiced his case because he was unable to prove the maliciously false nature of the publications at issue. First of all, we fail to see how admitting the documents jointly with a stipulation as to what Carter would say, instead of admitting them one-by-one, is prejudicial—by either method the same evidence becomes part of the record. Assuming arguendo, however, that the method of admitting the evidence was prejudicial, petitioner failed, after numerous requests and warnings by the ALJ, to prove the relevance of this evidence to the issue at trial, that is, the overbreadth of Rules 27, 29 and 30.

Petitioner's attempt to prove the maliciously false nature of these exhibits is not a defense to Rule 27's broad sweep. Granted, if the documents were maliciously false or slanderous and thus not protected by National Labor Relations Act (Taft-Hartley) § 7, 29 U.S.C. § 157 (1970) at all, petitioner could prevent distribution of such documents on nonwork time and in nonwork areas of the plant as Rule 27 allows. *Maryland Drydock Co. v. NLRB, supra,* 183 F.2d at 541–42. *Cf. NLRB v. Local Union No. 1229, supra,* 346 U.S. at 475, 74 S.Ct. 172. No one claims that petitioner could not do so; in fact, under the laws of libel petitioner could even prevent distribution of maliciously false material on non-company property. The problem is that Rule 27 is not limited to libelous or maliciously false statements; it also allows petitioner to prevent distribution, in nonwork areas and on nonwork time, of material protected by § 7. As stated, the only way petitioner can demonstrate the necessity of Rule 27's overly broad proscription of the distribution of documents is by showing special circumstances, such as disciplinary problems. The fact that the documents are false or maliciously false is irrelevant to this defense unless petitioner can show the falsity leads to a disruption of production, safety or discipline. Despite repeated warnings by the ALJ to do so, petitioner made no attempt to crucially link these exhibits to this defense.

Similarly, petitioner's attempt to prove the maliciously false nature of CEJO documents misses the mark in defending Rules 29 and 30. Even if these exhibits were maliciously false and thus justified the sanctions in Rules 29 and 30, this fact does not cure the improperly overbroad proscription in these rules of merely "false" documents.

Because of this lack of prejudice and lack of relevance to the issue of overbreadth, we find no error in the ALJ's wisely expedient decision to receive these documents as a group and admit Carter's testimony as a stipulation.

■ The last evidentiary ruling contested by petitioner is the ALJ's refusal to admit Exhibits 4, 22 and 23 into evidence for inadequate foundation. These exhibits are publications which contain unfavorable remarks about ACIPCO and which were given to Carter by various employees and supervisors as he walked through the plant. We agree with the ALJ that, because the authorship of these documents was uncertain, there was inadequate foundation for their admissibility. Although these leaflets were entitled "Voice of CEJO" and thus there was some circumstantial evidence of their authorship, both the General Counsel and CEJO members denied that they were CEJO publications. We therefore defer to the ALJ's decision that they were not sufficiently authenticated. *Cf. United States v. Sutton,* 138 U.S.App.D.C. 208, 213, 426 F.2d 1202, 1207 (1969).

III. Was the Order Overbroad?

■ Petitioner's last allegation of error is that paragraphs I(b), I(c), and I(e) of the cease and desist order are too broad. Petitioner clearly failed to raise its objections to paragraphs I(b) and I(c) with sufficient specificity in its Statement of Exceptions to the ALJ's decision to permit the Board to rule on them. Petitioner is, therefore, prohibited by § 10(e) from raising those issues in this proceeding. *NLRB v. Ochoa Fertilizer Corp.,* 368 U.S. 318, 322, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961); *NLRB v. Seven-Up Bottling Co.,* 344 U.S. 344, 350, 73 S.Ct. 287, 97 L.Ed. 377 (1953); *Marshall Field & Co. v. NLRB,* 318 U.S. 253, 255, 63 S.Ct. 585, 87 L.Ed. 744 (1943); *Singer Co. v. NLRB,* 429 F.2d 172, 181–82 (8th Cir. 1970). By construing petitioner's Statement of Exceptions broadly, however, it is possible to find a sufficiently specific objection to paragraph I(e) and thus render it reviewable by this court. Paragraph I(e) requires petitioner to cease and desist from:

[p]rohibiting its employees from distributing leaflets or other literature relating to their wages, hours, working conditions or other terms and conditions of employment if performed off Respondent's property or, if on Respondent's property, if such distribution is on the employees' non-worktime [sic] and in non-work areas.

ACIPCO argues that because this paragraph requires it to cease and desist prohibiting its employees from distributing literature "off respondent's [ACIPCO's] property" and, because there is no evidence ACIPCO ever attempted to prohibit its employees from distributing literature off its property, paragraph I(e) is too broad. Whether petitioner has yet attempted to control its employees' distribution of literature off company property, however, is not determinative in assessing the proper scope of this order. What is significant is the fact that, under Rules 29 and 30, petitioner had the power to control the distribution of literature on *and* off company property. It is this power which the Board seeks to address in its order. In conclusion, we reject all of petitioner's claims that the Board's order is overly broad.

For the foregoing reasons, we affirm the decision of NLRB and order that it be enforced.