[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Plaintiff International Brotherhood of Police Officers, Local 301's (hereinafter "IBPO") motion for declaratory judgment. Defendants' City of Cranston (hereinafter "City") and Melody J. Cassel and Raymond J. Angell III (hereinafter "Cassel" and "Angell") object to Plaintiff's motion for declaratory judgment and Defendant City brings a cross motion for declaratory judgment. Opposing parties have timely filed objections to each respective motion.
 Facts and Travel
The facts in this case are largely undisputed. The Plaintiff, International Brotherhood of Police Officers, Local 301 is a labor organization, and at all times pertinent hereto was the duly certified exclusive bargaining representative for all permanent police officers employed by the Cranston Police Department, up to and including the rank of Captain. The Defendant, City of Cranston, is a municipal corporation and body politic, duly organized pursuant to the Rhode Island General Laws. At all times pertinent hereto, Defendant Melody J. Cassel was a permanent member of the Cranston Police Department and a member of the bargaining unit represented by the IBPO. At all times pertinent hereto, Defendant Raymond J. Angell III was a permanent member of the Cranston Police Department and a member of the bargaining unit represented by the IBPO.
On or about February 10, 1989, Defendant Cassel was indicted on one felony count of obtaining money under false pretenses and twenty misdemeanor counts of filing false documents. Also on or about February 10, 1989, Defendant Angell was indicted on one felony count of obtaining money under false pretenses and seventy-five misdemeanor counts of filing false documents. Shortly thereafter, Defendants Cassel and Angell were suspended without pay by the Cranston Police Department, pursuant to G.L. §42-28.6-13(D). On or about February 14, 1989, the ProvidenceJournal published an article referencing the aforementioned indictments, along with the indictment of a third officer, and the Defendants' suspension without pay.
On or about June 29, 1990, all counts in the aforementioned indictments were dismissed pursuant to R.I. Super. R. Crim. P. 48(A). Further, all records relating to these indictments were expunged and the file was sealed. Thereafter, Defendants Cassel and Angell were reinstated to their positions as police officers with the Cranston Police Department.
On or about December 31, 2002, the position of Business Agent, part of the executive board of the IBPO, was vacated. In accordance with the IBPO Constitution and By-Laws, nominations were received, and an election was scheduled to take place on January 15, 2003. During this time, members of the IBPO engaged in various forms of campaign activity while on the premises of the Cranston Police Department. Defendant Angell was one of the individuals nominated for the position of Business Agent for the IBPO. Defendant Cassel was neither a candidate, nor was she involved in the campaign for Business Agent.
At some point during the weekend of January 11, 2003, a photocopy of the February 14, 1989 Providence Journal newspaper article, discussed above, had been downloaded from theProvidence Journal archives and was placed in several officers' mailboxes located in the Cranston Police Department and was displayed in various locations within the Police Department. Prior to distribution of this article, the name of the third officer identified in the article was redacted by blacking out the name, leaving only the names of Defendants Cassel and Angell. Further, the date on which the article was downloaded from theProvidence Journal archives was also redacted. It is also noteworthy that Defendants' Cassel and Angell were legally married to each other at this time.
Shortly following the distribution of the aforementioned newspaper article, Defendants Cassel and Angell filed a complaint with the Cranston Police Department requesting an internal affairs investigation to determine whether the department's Rules of Conduct had been violated. In response to this incident and the Defendants' complaint, the Cranston Police Department began interrogating certain members of the bargaining unit as to their individual conduct pertaining to the downloading and distribution of the newspaper article in question. Thus far, Defendant City of Cranston Police Department has taken disciplinary action against one member of the bargaining unit for his refusal to cooperate in the investigation.
Plaintiff IBPO has filed a motion for declaratory judgment with this Court, requesting this Court to enjoin the Defendant, City of Cranston from utilizing its Internal Affairs Division to investigate the conduct of IBPO members as its pertains to the newspaper article in question. Additionally, Plaintiff requests that this Court enjoin Defendant City of Cranston Police Department from taking disciplinary action against any member of the IBPO, who either fails or refuses to cooperate in any investigation pertaining to campaign conduct, and to rescind any disciplinary action already taken forthwith. Defendants City of Cranston, Cassel, and Angell object to Plaintiff's motion for declaratory judgment. Defendant City has filed a cross motion for declaratory judgment, allowing the City of Cranston Police Department's continuation of the investigation into this matter. Additionally, in its motion for declaratory judgment, Defendant City seeks a declaration from the Court that the speech giving rise to this controversy does not constitute a form of protected speech under the United States Constitution, the Rhode Island Constitution, or the State Labor Relations Act.
 Standard of Review
Under the Uniform Declaratory Judgment Act, this Court "shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." G.L. 1956 § 9-30-1. The stated purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." G.L. 1956 §9-30-12; see also Capital Props., Inc. v. State,749 A.2d 1069, 1080 (R.I. 1999) (citations omitted) (stating that the purpose of the Act is "to facilitate the termination of controversies"). "A decision to grant a remedy under the Uniform Declaratory Judgments Act is purely discretionary." WoonsocketTeachers' Guild Local Union 951, AFT v. Woonsocket Sch. Comm.,694 A.2d 727, 729 (R.I. 1997). However, the necessary predicate to the exercise of that discretion under the Act is the existence of an actual justiciable controversy. See Providence TeachersUnion v. Napolitano, 690 A.2d 855, 856 (R.I. 1997).
 Rhode Island Labor Relations Act
Plaintiff asserts that the internal affairs investigation being conducted by the City of Cranston Police Department is in violation of G.L. § 28-7-12, Rights of Employees, and G.L. §28-7-13 (10), Unfair Labor Practices, and thus Plaintiff is entitled to a declaratory judgment, enjoining the continuation of said investigation. The Plaintiff concedes that the question as to the respective rights of unionized public sector employees as they pertain to election activity is one of first impression in this jurisdiction. Plaintiff further contends that an examination of the legislative history of public sector labor law in Rhode Island, coupled with established principles of statutory construction and relevant federal law, reveals that unionized public sector employees have the right to distribute campaign material free from interference. In support of its position, Plaintiff cites three cases supporting the proposition that an employer's interference with the employee's right to distribute material in the workplace constitutes a violation of the National Labor Relations Act. See American Cast Iron Pipe Co. v.National Labor Relations Bd., 600 F.2d 132 (8th Cir. 1979);National Labor Relations Board v. Southern Maryland HospitalCenter, 916 F.2d 832 (4th Cir. 1990); Consolidated Diesel Co.v. National Labor Relations Board, 263 F.3d 345 (4th Cir. 2001).
This Court finds that the distribution of the ProvidenceJournal article is not protected conduct under the Rhode Island Labor Relations Act. While § 28-7-2 and § 28-7-12 both discuss the right to bargain collectively and to engage in concerted activities, these provisions do not protect an employee's right to participate in personal attacks against fellow employees. Plaintiff vehemently asserts that the distribution of theProvidence Journal article was election campaign conduct because it was distributed the weekend before the election for Business Agent and it referenced one of the candidates, Defendant Angell. Numerous factors suggest, however, that the distribution of this article was not election campaign conduct and, therefore is not entitled to protection. This article was neither labeled as campaign material nor distributed in any manner directly relating to the election for Business Agent. Furthermore, the article referenced Defendant Cassel, who was not running for the position of Business Agent and was not involved in the election. Moreover, the anonymously distributed article did not express a single view about the election or the qualifications of the candidates. Such activity cannot be properly characterized as protected election campaign conduct under the Rhode Island Labor Relations Act.
This Court also notes that the trilogy of cases cited by Plaintiff does not support its position that the activity in the present case is protected under the Rhode Island Labor Relations Act. The material distributed in those cases is clearly distinguishable from the article that was circulated in the Cranston Police Department. For example, in American Cast IronPipe, Co., the questionable conduct was the distribution of leaflets which were clearly identified as written and distributed by an employee group. 600 F.2d 132. In Southern MarylandHospital Center, the issue was whether employers could discipline employees for distributing union literature at the front entrance of the hospital during organizational campaigns. 916 F.2d 832. Similarly, in Consolidated Diesel Co., the issue was whether employers could discipline employees for openly distributing a leaflet published by a union in an attempt to organize workers at an employer's facility. 263 F.3d 345. In none of the aforementioned cases, did the material distributed directly single out and disparage specific employees. Moreover, in each of the above cases, the employees and/or unions were expressly conveying their views on current union-related issues — a valuable form of expression that cannot be compared to the dissemination of a fourteen year old misleading newspaper article which was neither presented nor distributed as campaign material related to the position of Business Agent.
In American Cast Iron Pipe Company, the Eight Circuit declared that while employers may not punish employees merely for publishing false statements, it is well established that employers may proscribe maliciously false statements. 600 F.2d at 137. Although the information contained in the ProvidenceJournal article was not false at the time it was initially printed in 1989, that information was patently misleading fourteen years later.
Malice is shown when it can be demonstrated that the "primary motivating force for the communication was the publisher's ill will or spite." See Mills, M.D. v. C.H.I.L.D., Inc, et al.,837 A.2d 714 (R.I. 2003) (quoting Ponticelli v. Mine SafetyAppliance Co., 247 A.2d 303, 308 (1968)). In this case, malicious intent may be inferred from the surrepticious nature of the article's distribution, the absence of material clarifying that the charges against Defendants were subsequently dismissed, the inclusion of the identity of Defendant Angell's wife, a fellow police officer not involved in the election, and the deletion of a third police officer from the article whose reputation was thereby protected. The malicious nature of the activity in this case is further evidenced by an anonymous letter (Defendant's Exhibit A) sent from Hartford, Connecticut to Defendants Cassel and Angell in late February 2003. This letter assailed Cassel and Angell's character and their reactions to the newspaper article.[1] This disparaging and harassing letter was unquestionably connected to the dissemination of theProvidence Journal article and the subsequent actions taken by the Defendants in defense of their reputation. There is little doubt that the individuals involved in the distribution of the article are also responsible for this letter being sent to the Defendants. Finding that the distribution of the ProvidenceJournal article is not the type of activity that G.L. §§ 28-7-2
and 28-7-12 are intended to protect, this Court denies Plaintiff's Motion for Declaratory Judgment and will not impede the ongoing internal investigation into this matter.
 First Amendment
The Court notes at the outset that Defendant City mischaracterizes its motion for declaratory judgment as a motion for summary judgment. The rights and status Defendant City seeks are declaratory. Accordingly, the Court shall proceed to treat Defendant City's cross motion as a cross motion for declaratory judgment.
Implicit in Plaintiff's argument as to why it should be afforded declaratory relief is the assertion that distribution of the Providence Journal article is a form of protected speech. In response to Plaintiff's claim, and in support of its own motion for declaratory judgment, Defendants argue that the undertaking of an internal affairs investigation by the Department is not violative of the union's First Amendment rights. This Court finds compelling Defendants' argument that the speech at issue in this case is neither protected by the United States Constitution nor the Rhode Island State Constitution. Defendants contend that based on the balancing test set forth by the United States Supreme Court, the distribution of theProvidence Journal article was not protected by the First Amendment, as it has long been established that state and local governments have greater latitude in restricting the activities of its employees than that of citizens in general. Kelley v.Johnson, 425 U.S. 238, 245, 96 S.Ct. 1440, 1445, 47 L.Ed.2d 708, 714 (1976). At issue is whether this expanded latitude allows the City to investigate and potentially discipline its employees for distributing a newspaper article that negatively portrays fellow employees.
There must be a balance between employees' First Amendment rights to comment upon matters of public concern and the interest of the City, as an employer, in promoting the efficiency of the public services it performs through its employees. SeePickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811, 817 (1967). While the City may place limited constraints upon employee activities for the public interest, employees do not relinquish their First Amendment rights to comment on matters of public concern in connection with their employment. See id. If the public employee acts upon matters of personal interest, however, the court is "not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Meyers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708, 720 (1983).
In Connick v. Meyers, the Supreme Court of the United States declared that "whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."Id. at 147-48, 1690, 720. The threshold inquiry here is whether the activity at issue involved a matter of public concern, such that any retaliatory measures taken by the employer may be subject to First Amendment scrutiny. See Breuer v. Hart,909 F.2d 1035, 1037 (7th Cir. 1990). While it is important that public employees be able to speak out on matters of interest to the community without fear of retaliatory measures, all issues that transpire within a government office cannot be characterized as matters of public concern. See Connick, 461 U.S. at 148-49, 103 S.Ct. at 1691, 75 L. Ed.2d at 721.
In Connick, an assistant district attorney distributed a questionnaire to all fellow assistant district attorneys regarding their views on office policies, after being informed of a transfer to which she was opposed. Id. at 141, 1687, 716. The questionnaire included questions relating to office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns. Id. The Court found that only the question regarding political pressure to work in political campaigns constituted a matter of public concern because unlike the other questions which solely addressed internal office affairs, pressure to work in political campaigns is a matter of interest to the community. Id. at 149, 1691, 721. Following this same reasoning, in Breuer v. Hart, the Seventh Circuit concluded that a public employee's complaints to public authorities regarding theft and conversion by a fellow employee undoubtedly constituted a matter of public concern, as "this activity, if proven, would constitute `wrongdoing or breach of public trust.'" Breuer at 1038. Though the activity was motivated by a personal crusade, the Breuer Court declared that "the motive behind the employee's speech, while relevant to the public concern inquiry, is not dispositive." Breuer, 909 F.2d at 1038 (citing Belk v. Town of Minocqua, 858 F.2d 1258, 1264 (1988)).
 Content, Form, and Context
Plaintiff in the present case contends that distribution of the newspaper article warrants protection because the conduct involved campaign activity for the elected Union position of Business Agent. While this Court agrees that election campaign conduct can generally be characterized as a matter of public concern, this Court finds that the activity in question does not constitute organizational activity directly related to this election campaign for Business Agent. First and foremost, the distributor of the article in the present case chose to remain anonymous and did not identify the newspaper article as campaign propaganda. Though the article was distributed the weekend immediately prior to the election, no references to the election were made in connection with the distribution of the article and no views about the election were ever expressed in conjunction with the distribution of the document. Moreover, while the article targeted both Defendants Cassel and Angell, only Angell was running for the position of Business Agent. In fact, Defendant Cassel had no involvement with the election other than the fact that she was married to Defendant Angell and was an employee of the Cranston Police Department. Despite the fact that Defendant Cassel has no direct relation to the election, the individual or individuals who disseminated the article made a conscious choice to target Defendant Cassel, along with Defendant Angell, while blacking out the name of the third officer mentioned in the article.
Furthermore, the article in question had little potential to shed any light on Defendant Angell, as the information therein discussed charges from fourteen years prior that were ultimately dismissed and expunged. "Common sense suggests that employees may think less clearly and rationally, and that the results of an election may thereby be materially influenced, when they are exposed to propaganda of a highly inflammatory nature. Where such propaganda is, in addition, not germane to the issues at stake in the election and consists merely of an irrelevant appeal to the prejudices of the employees, it should be subjected to the most careful scrutiny." Schneider Mills, Inc. v. NLRB, 390 F.2d 375, 387 (4th Cir. 1968). In contrast to the question in Connick, that addressed pressure to work in political campaigns by superiors and the complaint in Breuer, which dealt with current criminal allegations against a fellow employee, the information disseminated in the Providence Journal article was neither enlightening nor valuable to the public.
Additionally, an examination of the form and context in which the article was presented demonstrates that the activity resembled a personal vendetta rather than a matter of public concern. In contrast to the complaints in Breuer, which the Plaintiff took to state authorities, the article in this case was distributed only to fellow employees of the Cranston Police Department and was distributed anonymously. Furthermore, the distributor's failure to send an attachment that the charges referenced in the article were subsequently dismissed and expunged further demonstrates that the distributor of the article was not seeking to increase public awareness.
 Pickering Balance
Even assuming arguendo that the article touched upon a matter of public concern by referencing a candidate running in an election, the courts still must balance the employee's right to engage in such activity with the City's interest in maintaining an efficient and harmonious work environment. See Connick, 461 U.S. at 150-52, 103 S.Ct. at 1692-93, 75 L. Ed.2d at 722-23. "To this end, the Government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs." Id. at 151, 1692, 722. (citing Justice Powell's opinion in Arnett v. Kennedy, 416 U.S. 134, 168 (1974)). Whether a public employer is justified in disciplining an employee is contingent upon various factors including (1) the need to maintain discipline within the workplace; (2) the need for confidentiality; (3) the need to curtail conduct that impedes employee work performance; and (4) the need to maintain a good personal relationship between employees and their superiors.Breuer, 909 F.2d at 1039-40. Thus in Breuer, even though the court found that the employee's complaints warranted First Amendment protection, the court concluded that the employee's termination was justified, because his activity threatened to cause disruption within the Department. Id. at 1040.
Like the activity in Breuer, the conduct in the present case has threatened to disrupt the Cranston Police Department. The article directly targeted two employees of the Department, who subsequently requested that the Department conduct an internal investigation, and who have joined as Defendants in this case. Those involved in the administration of a police department are not constitutionally required to ignore such disruptive conduct at the risk of throwing the department into upheaval. See id.
at 1040. This is especially true in law enforcement, where respect and consideration among employees is essential to a cohesive work environment. See id. at 1041. "Speech that might not interfere with work in an environment less dependent on order, discipline, and esprit de corps could be debilitating to a police force. Such considerations are permissible in weighing constitutional violations." Id.
Rule 38 of the Cranston Police Department's Rules of Conduct provides:
 "A member of the Department shall not criticize any other member except in the line of duty as a superior to a subordinate, nor shall the member maliciously gossip about any superior, order, policy, procedure, case, or event that should remain police information, nor shall a member cause to discredit, lower, or injure the morale of the personnel of the department or that of any individual of the department."
The Cranston Police Department has determined that it is necessary to conduct an internal affairs investigation in order to discover who downloaded and distributed the ProvidenceJournal article at issue. This Court does not deem such an investigation to be an unreasonable infringement of employees' First Amendment rights considering the nature of the activity involved and the City's interest in maintaining a unified police department. There is no question that the conduct at issue has the potential to be debilitating to the order, discipline, andesprit de corps of the Cranston Police Department.
 Conclusion
The distribution of the Providence Journal article is not a form of protected speech under the United States Constitution, the Rhode Island Constitution or the Rhode Island Labor Relations Act, and, therefore, this Court finds no basis to impede or interfere with the City's ongoing investigation into this matter. In conclusion, this Court must deny Plaintiff's motion for declaratory judgment and grant Defendant City's motion for declaratory judgment.
[1] The language used in this letter is of the most vile and deplorable nature and shocks the conscience of this Court.