**Donald G. BREUER,**
**Plaintiff–Appellant,**

v.

**Terry HART, Sheriff of Warren County, Defendant–Appellee.**

No. 88–2874.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1990.

Decided Aug. 9, 1990.

Glenn H. Collier, Jackson, Mitchell & Collier, Peoria, Ill., for plaintiff-appellant.

Charles E. Hervas, James G. Sotos, James R. Schirott, Schirott & Associates, Itasca, Ill., for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS and WOOD, Jr., Circuit Judges.

CUMMINGS, Circuit Judge.

Terry Hart, then sheriff of Warren County, Illinois, fired Donald G. Breuer from his job as a deputy sheriff in December 1986. Breuer filed suit against Hart under 42 U.S.C. § 1983, contending that he had been terminated because he had exercised his constitutionally protected right of free speech. The district court granted the defendant's motion for summary judgment. The court found that the plaintiff's speech did not involve issues of public concern because it was in the nature of a personal grievance and, in the alternative, that the speech constituted a disruption of the operation of the Warren County Sheriff's Department (the "Department") justifying the termination. The district court's judgment is now affirmed on the basis of the second ground.[1]

### I.

We review *de novo* the record and the controlling law in resolving this appeal from the district court's grant of summary judgment. *PPG Indus., Inc. v. Russell,* 887 F.2d 820, 823 (7th Cir.1989). The district court must be reversed if there is sufficient evidence favoring the plaintiff for a jury to return a verdict for the plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202. The parties give largely similar accounts of the relevant facts in this case. In reviewing the record, the plaintiff's version will be credited where the two accounts differ.

### II.

Breuer was employed 13 years as a deputy sheriff for Warren County before the termination that gives rise to this suit. Breuer and the defendant were close friends when Breuer began work as a deputy and for some time thereafter. The two men were brothers-in-law for the first nine years of Breuer's career as a Warren County deputy. But Breuer's sister and the defendant were divorced in 1982 and both parties agree that personal relations between the two men soured during the early 1980s.

At some point during the middle 1980s, Breuer and some other members of the Department became upset over what they felt was favoritism shown by the defendant toward Michelle Pate, one of his female employees. These sheriff's employees were convinced that: (1) the defendant and Pate were romantically involved; (2) Pate was, as a personal favor, being paid overtime for work not performed; (3) Pate was also being paid for sick leave time she had not earned.

This issue came to a head on February 11, 1986, when Breuer "confronted" the defendant (Pl.'s Br. at 11). Breuer told the sheriff that he was upset that Pate was being treated differently from other employees. The defendant denied the favoritism allegation. Breuer then asked the defendant to hold a meeting of the Depart-

---

[1]. Because we affirm the district court on the disruption ground we do not reach either the qualified immunity defense under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 raised by the defendant or consideration of the motivation factor discussed in *Mt.*

*Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–287, 97 S.Ct. 568, 575–576, 50 L.Ed.2d 471 (employer may justify disciplinary action by showing action would have been taken even in absence of "whistle-blowing" activity).

ment "to clear the air." The defendant refused.

Immediately following that discussion, Breuer began to study the work habits and compensation of Pate and frequently to discuss conditions within the Department with a group of deputies opposed to the sheriff's policies. He noted Pate's comings and goings at the Department and recorded such information as whether her absences were excused. He took his information to Warren County State's Attorney Greg McClintock in July 1986. McClintock subsequently contacted the office of the Illinois Attorney General. Breuer's charges were investigated by the Illinois Department of Criminal Investigation (DCI). Breuer enlarged his charges to include claims that the defendant had taken two television sets and two microwave ovens from an evidence locker for his own personal use and that the defendant had filled his personal car with gas at county expense. On December 2, 1986, a representative of the Attorney General advised McClintock that the DCI had concluded that it could not base a criminal prosecution on the allegations and that the case was closed.[2]

The defendant gave Breuer a written notice of termination on December 5, 1986. The notice did not state the reasons for the termination.[3]

## III.

Breuer did not relinquish his First Amendment rights when he joined the Department, but he implicitly agreed that his rights to speech could be balanced against the sheriff's interest in running an efficient Department. *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 574, 88 S.Ct. 1731, 1734, 1737, 20 L.Ed.2d 811; *Ex parte Curtis*, 106 U.S. 371, 373, 27 L.Ed. 232. The threshold inquiry is whether Breuer's

statements and actions involved matters of public concern so that the defendant's discharge decision may be "subject to judicial review" under the First Amendment. See *Connick v. Myers*, 461 U.S. 138, 146–147, 103 S.Ct. 1684, 1689–1690, 75 L.Ed.2d 708. If not, it is not necessary to scrutinize the discharge further for a violation of the First Amendment. *Id.* at 146, 103 S.Ct. at 1689. If so, the public employer may request the court to balance " 'the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* at 142, 103 S.Ct. at 1687 (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734). Though these inquiries require predicate factual determinations, they are questions of law. *Connick*, 461 at 148 n. 7, 103 S.Ct. at 1690 n. 7; *Biggs v. Village of Dupo*, 892 F.2d 1298, 1300 n. 1 (7th Cir.1990).

### A. Public Concern

Evaluating whether Breuer's speech dealt with a matter of public concern requires an examination of the "content, form, and context" of his statements "as revealed by the whole record." *Connick*, 461 U.S. at 147–148, 103 S.Ct. at 1690–1691. In *Connick* an assistant district attorney objected to various policies and circumstances within her office. *Id.* at 140–141, 103 S.Ct. at 1686–1687. Her complaints included intra-office transfer policies (including her own impending transfer from one section of the district attorney's office to another), office morale, grievance procedures, and alleged pressure to work in political campaigns. *Id.* The assistant produced and distributed a questionnaire to 15 of her colleagues on these topics. *Id.* at 141, 103 S.Ct. at 1687. In short order she was terminated, in part because her super-

---

**2.** The defendant adamantly denies the substance of these allegations (Def.'s Br. at 11 n. 1). Nevertheless, the defendant does not allege that Breuer knowingly or recklessly made false statements that might void the protected status of his speech. *Pickering v. Board of Educ.*, 391 U.S. 563, 574 n. 6, 88 S.Ct. 1731, 1738 n. 6, 20 L.Ed.2d 811; *American Postal Workers Union v.*

*United States Postal Serv.*, 830 F.2d 294, 308–309 (D.C.Cir.1987).

**3.** The district court did not discuss, and the parties do not raise, any allegation that Breuer was denied due process in his termination as in cases such as *Panozzo v. Rhoads*, 905 F.2d 135 (7th Cir.1990).

visors viewed the distribution of the questionnaire as a "mini-insurrection." *Id.* Justice White, writing for the Court majority, found that the content, form, and context of all but one of the topics in the questionnaire revealed them to be essentially "internal office affairs." *Id.* at 149, 103 S.Ct. at 1691. The Court stressed that if the First Amendment were made available to protect discussion of issues such as transfer policies and office morale—even though such topics are naturally of interest to the public insofar as they relate to the efficient performance of a tax-supported agency—then every employment decision could be transformed into a constitutional matter and "government offices could not function." *Id.* at 143, 148–149, 103 S.Ct. at 1688, 1690–1691. The single topic that stood out from the others was pressure to work in political campaigns, which the majority found to be a question of public concern based upon long-standing precedent of the Court regarding the "demonstrated interest in this country that government service should depend upon meritorious performance rather than political service." *Id.* at 149, 103 S.Ct. at 1691.

Applying *Connick*'s public-concern test, Breuer's complaints may qualify for First Amendment protection. Taking the elements of the test in turn:

*1. Content.*—Breuer's initial complaints of favoritism and his subsequent allegations that the defendant stole county property were both of public concern in their content. The thrust of Breuer's original complaint was that a particular employee had received pay for work not performed because of a romantic liaison with the sheriff. This activity, if proven, would constitute "wrongdoing or breach of public trust," which the Court in *Connick* suggested might qualify for protection. 461 U.S. at 148, 103 S.Ct. at 1690. The conversion allegation is even more plainly of public concern in its substance. See *Ohse v. Hughes*, 816 F.2d 1144, 1151 (7th Cir.1987) (allegations including inappropriate taking of sick and vacation days and misappropria-

tion of public funds for unauthorized uses clearly matters of public concern).[4] The defendant does not even attempt to refute the district court's finding (Dist. Court Op. at 6) that the content of these allegations is of public concern.

*2. Form.*—Breuer ultimately took his complaints to state authorities who had the prosecutorial authority to investigate them. This lends a public air to the form of these complaints. Again, the defendant does not challenge the district court's finding that the lodging of the complaints with the local state's attorney's office, outside the normal chain of command of his workplace, is quite unlike the *ad hoc* questionnaire to fellow staff members at issue in *Connick* (Dist. Court Op. at 7).

*3. Context.*—Taken in context, as the district court found, it is apparent that this matter arose as a personal complaint by Breuer. Breuer was motivated at each step of his personal crusade by self-interest, both to challenge his former friend the sheriff and to win better working conditions for himself. As the district court noted and Breuer admits in his brief, Breuer specifically testified that in recent years he had not been allowed liberal use of sick leave as he had been allowed in the past (Dist. Court Op. at 10; Pl.'s Br. at 19). It is also clear from the record that Breuer did not investigate or challenge potential overtime or sick leave abuses by employees other than the sheriff's alleged favorite, suggesting that personal animus toward the sheriff and the female employee was Breuer's primary purpose (Dist. Court Op. at 10). As for the allegations of conversion, in the context of the record it appears that Breuer added them simply to create more heat for his adversary the sheriff.

■ This Court has emphasized, however, that the motive behind the employee's speech, while relevant to the public concern inquiry, is not dispositive. *Belk v. Town of Minocqua*, 858 F.2d 1258, 1264 (1988) (collecting cases). The finding that a speaker

---

**4.** This opinion was vacated and remanded on other grounds. 485 U.S. 902, 108 S.Ct. 1070, 99 L.Ed.2d 230. On remand, this Court reinstated the decision in large part, including the holding cited in the text. 863 F.2d 22, 24 (1988).

was motivated by narrow self-interest may in itself strongly suggest that his speech involved a private dispute. Yet such a finding alone cannot disqualify a speaker from protection. Wrongdoing may often be revealed to the proper authorities only by those who have some personal stake in exposing wrongdoing. This Court has recognized that " '*content is the greatest single factor in the* Connick *inquiry.*' " *Belk*, 858 F.2d at 1264 (quoting *Berg v. Hunter*, 854 F.2d 238, 243 (7th Cir.1988), certiorari denied, — U.S. —, 109 S.Ct. 1314, 103 L.Ed.2d 583) (emphasis in *Belk* ). In *Connick* itself, the Court considered one of the plaintiff's allegations to be of public concern in spite of the Court's finding that her grievances were firmly rooted in a personal dispute over her transfer. "*Connick* makes clear that even amid the strife of personal dispute, an employee's speech may touch upon matters of public concern necessitating the use of *Pickering* 's balancing test." *Berg*, 854 F.2d at 242 (citing *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir.1988), and *Johnson v. Lincoln Univ. of Commonwealth*, 776 F.2d 443, 451 (3d Cir. 1985)).[5]

The specificity and seriousness of Breuer's allegations make this case entirely distinguishable from such cases as *Hesse v. Board of Educ.*, 848 F.2d 748, 751–752 (7th Cir.1988), certiorari denied, — U.S. —, 109 S.Ct. 1128, 103 L.Ed.2d 190, in which a teacher's criticism of his evaluations and defense of his teaching methods were found to be not matters of public concern, or *Vukadinovich v. Bartels*, 853 F.2d 1387, 1390–1391 (7th Cir.1988), in which a teacher's negative comments to a newspaper

reporter about his firing as basketball coach were also held not matters of public concern. The Court in *Vukadinovich* suggested that it might have reached a different decision if the teacher in that case had made direct allegations that his employers had fired him as the basketball coach in order to conceal some illicit behavior. *Id.* at 1391. In this case Breuer claimed that the sheriff had intentionally breached the public trust by stealing county property and allowing an employee to accept compensation on a fraudulent basis and then fired Breuer in retaliation for his attempt to bring these allegations to light. The fact that these serious allegations arose in the context of what began as a personal dispute does not in itself disqualify from protection all speech on the topics arising from that dispute.

**B. Pickering *Balance***

■ Turning to the second step of the analysis, however, it is evident that Breuer's complaint was properly dismissed on the motion for summary judgment. The defendant has met the burden he bears of justifying the discharge on legitimate grounds. *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315. Under *Pickering*, the public employer's burden in attempting to justify the discharge of an employee for activities and statements involving matters of public concern depends on various factors, which have been summarized by this Court:

> (1) the need to maintain discipline or harmony among co-workers; (2) the need for confidentiality; (3) the need to curtail

5. This Court has often underscored the significance of the motivation of the speaker. *Barkoo v. Melby*, 901 F.2d 613, 618, 620 (1990); *Vukadinovich v. Bartels*, 853 F.2d 1387, 1390–1391 (1988); *Callaway v. Hafeman*, 832 F.2d 414, 417 (1987); *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (1985). These cases correctly observe that the motivation of the speaker should carry great weight in determining whether, as we have described the inquiry, "the personnel action was based on legitimate personnel concerns or rather was based on a naked desire to punish an individual for expressing a certain point of view." *Egger v. Phillips*, 710 F.2d 292, 320 (1983) (*en banc* ), certiorari denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262. When a

single set of allegations is at issue, the motivation of the speaker might play a large role in determining how the parties perceived the speech and the alleged retaliation. Yet this case involves a changing set of allegations. In finding that Breuer's complaints did not involve matters of public concern, the district court did not place sufficient weight upon the fact that by the time Breuer was fired he had alleged that the sheriff was stealing county property. What began as a dispute over overtime and vacation pay fueled in part by personal animus became a matter of larger public concern by the time Breuer finished with his complaints to investigators.

conduct which impedes the [employee's] proper and competent performance of his daily duties; and (4) the need to encourage a close and personal relationship between the employee and his superiors, where that relationship calls for loyalty and confidence.

*Clark v. Holmes*, 474 F.2d 928, 931 (1972) (*per curiam*), certiorari denied, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695. The Court in *Connick* placed special emphasis on the fourth point: "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." 461 U.S. at 151–152, 103 S.Ct. at 1692–1693. The public employer is not required to wait until those working relationships actually disintegrate if immediate action might prevent such disintegration. *Connick*, 461 U.S. at 152, 103 S.Ct. at 1692; *Domiano v. Village of River Grove*, 904 F.2d 1142, 1146 (7th Cir.1990) ("The defendants were not obligated to wait until [plaintiff] persuaded all fire department members to similarly rebel before discharging him for insubordination."). Also relevant to the inquiry is the level of public concern suggested by the employee's speech and the manner, time, and place in which the speech takes place. *Connick*, 461 U.S. at 152, 103 S.Ct. at 1693. For example, the *Connick* Court was less sympathetic to the assistant district attorney's position because she exercised her rights to speech entirely at the office. *Id.* at 153, 103 S.Ct. at 1693. Finally, if the speech at issue arose from a dispute over application of a particular policy to the speaker, some weight would have to be given to an employer's reasonable view that "the employee [had] threatened the authority of the employer to run the office." *Id.*

These factors largely run against Breuer and thus we conclude that the interest of the defendant in running his Department outweighs Breuer's right to speak and act as he did. The only factor that might weigh in his favor is the fact that Breuer's specific complaints did not involve the application of policy to him personally. The problem with even this argument, however, is that there is no need in this case to rely upon *Connick*'s rule that a threat to authority may be inferred when the speaker challenges the application of a policy to the speaker. By confronting the sheriff and conducting an investigation of the Department, Breuer in fact threatened the authority of the sheriff to run the Department.

Breuer makes some attempt to limit the speech at issue to his complaint to the state's attorney's office. If that complaint were the sole grounds for his termination summary judgment might have been inappropriate. To the contrary, however, the record establishes that Breuer's activities in attempting to build a case against the sheriff, including his unauthorized investigation within the Department, was as much a source of disruption as was the formal complaint. In his brief to this Court, Breuer acknowledges that the February 11, 1986, conversation in which Breuer told the sheriff that a meeting was needed to "clear the air" was the incident "that *led to the public airing* of the problems which had besieged the Department" (Pl.'s Br. at 5) (emphasis supplied). This assertion is fully supported by the record. See, *e.g.*, Bevenour Dep. at 20 (stating that following February 11 confrontation the Department "became two camps").

A sheriff running a small police operation (here, 16 members) is not constitutionally required to ignore such disruptive dissension at the risk of allowing the Department to fall into disorder. Using the approach urged by Breuer would insulate even the most disruptive employee from termination so long as the employee makes an allegation not frivolous on its face to appropriate authorities before his termination. It is therefore proper to evaluate the speech involved in this case as those statements Breuer made which, in the words of the sheriff's brother and chief deputy, "had everybody stirred up" (Richard Hart Dep. at 33).

This Court has noted that "[t]he initial, and often determinative, question is whether the speech interferes with the employee's work or with the efficient and successful operation of the office." *Knapp v. Whitaker*, 757 F.2d 827, 842 (1985), certio-

rari denied, 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29. There is strong evidence that Breuer's speech interfered with his own work and with the operation of the sheriff's office. Breuer in his own deposition admitted that a serious schism divided the Department. Numerous witnesses in the case testified that this conflict was fed by Breuer's confrontation with the sheriff and his investigation of Michelle Pate. In his deposition, the plaintiff resisted use of the word "investigation" to describe his study of the treatment of Pate (Pl.'s Dep. at 50). Yet his own words describe activities that fit that term: "I started keeping track * * * [of] what I saw, about what I was told, about payroll records. * * * I was looking and checking and watching, I guess you would say, searching for evidence to verify what everybody was complaining about." (Pl.'s Dep. at 47, 50). Furthermore, the plaintiff in his brief to this Court suggests that he considered himself a self-appointed investigator for the local prosecutor: "Plaintiff was trying to obtain enough evidence to show the State's Attorney that wrong doing [sic] was occurring" (Pl.'s Br. at 6).

This Court recently spoke of the potentially vital role that could be played by "whistleblowers" within police departments. *Biggs*, 892 F.2d at 1303. The Court is also mindful, however, that there is a particularly urgent need for close teamwork among those involved in the "high stakes" field of law enforcement. *Egger v. Phillips*, 710 F.2d 292, 319 (7th Cir.1983) (*en banc*), certiorari denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262; *id.* at 325–328 (Coffey, J., concurring in part). Speech that might not interfere with work in an environment less dependent on order, discipline, and *esprit de corps* could be debilitating to a police force. Such considerations are permissible in weighing constitutional violations. See, *e.g., Kelley v. Johnson*, 425 U.S. 238, 246, 96 S.Ct. 1440, 1445, 47 L.Ed.2d 708 (county may choose to allow local police to issue regulation governing length of officers' hair in the interests of discipline); *Rathert v. Village of Peotone*, 903 F.2d 510 (7th Cir.1990) (affirming dismissal on summary judgment motions of due process and First Amendment claims of male police officers in small department who were disciplined for wearing ear studs).

Had Breuer conducted his investigation on his own time, without involving other members of the Department, he might credibly argue that these activities did not interfere with his work or the work of others. His own testimony belies that position. Breuer testified that immediately following his confrontation with the sheriff he began working with others in the Department to build a case against the sheriff and Pate:

A. From that day on I started writing down what I saw, what I was told.

Q. Why did you do that?

A. Because things were so bad, people were complaining to me. Initially people in this department came to me. You'll have to ask them why. They came to me and complained to me about things that was [sic] going on. Why she can do that or why they can do this. They came to me.

(Pl.'s Dep. at 36).

At oral argument, Breuer's counsel argued that the district court's ruling places in an awkward position those public employees who suspect malfeasance on the job, and who plan to complain about the malfeasance. They must choose between the following two courses: (1) collecting more information regarding their suspicions, thereby building a stronger case to justify an effective investigation but risking disruption of the work place; and (2) not collecting information and risking an ineffective investigation. Potential whistleblowers are faced with many such difficult dilemmas. What may appear to be reckless and purely self-serving behavior in one context may appear appropriate and even noble in another, particularly with the clarifying benefit of hindsight. The defect in raising such dilemmas here, however, is that it ignores the balance which the Supreme Court has already struck in *Pickering* and its progeny, most notably *Connick* itself. Breuer's conduct was, as this Court has framed the question, "reasonably calculated to create disharmony or to have impaired discipline." *Yoggerst v. Stewart*, 623 F.2d 35, 40 (1980); see also *Patkus v.*

*Sangamon–Cass Consortium,* 769 F.2d 1251, 1258–1259 (7th Cir.1985) (disruption resulting from critical telegram sent by local government employee to federal agency made it impossible for employee to continue to serve as liaison between her employer and federal agency); *Germann v. City of Kansas City,* 776 F.2d 761, 764–765 (8th Cir.1985), certiorari denied, 479 U.S. 813, 107 S.Ct. 63, 93 L.Ed.2d 22.

Breuer may genuinely have hoped to force the sheriff to make changes for the ultimate benefit of the Department. His method, however, was to immerse himself in an intra-departmental contest with the sheriff. This contrasts sharply with the village police officer in *Biggs,* who criticized only the political leaders of his community and thus did not invite "the dangers inherent when law enforcement officials mistrust one another." *Biggs,* 892 F.2d at 1304 (quoting *Egger,* 710 F.2d at 319).

### IV.

Breuer's complaint involved matters of public concern. Yet in balancing the interests of the defendant in running a small, tightly knit police department against Breuer's interest in speaking as he did, the district court correctly found the defendant's interest to be more substantial.

AFFIRMED.