**Athel B. (Al) COOPER, Plaintiff,**

**v.**

**William E. (Bill) SMITH, individually and in his official capacity as Sheriff of Camden County, Georgia, Defendant.**

**Civ. A. No. CV293–70.**

United States District Court, S.D. Georgia, Brunswick Division.

May 12, 1994.

Christopher A. Frazier, St. Simons Island, GA, for plaintiff.

Terry Lee Readdick, Brunswick, GA, for defendant.

### ORDER

ALAIMO, District Judge.

On May 28, 1993, Plaintiff, Athel B. Cooper ("Cooper"), filed this federal question action against Defendant, William E. Smith ("Smith"), Sheriff of Camden County, Geor-gia, claiming that Smith violated Cooper's rights under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"), when Smith chose not to renew Cooper's commission as a deputy sheriff. Cooper claims that Smith dismissed him because he cooperated with the Georgia Bureau of Investigation ("GBI") during an investigation of Smith's alleged misdeeds, and because he wrote a letter which expressed hostility toward the Camden County Sheriff's Department (the "Department") and listed allegations of misconduct by Smith and the Department. This case is presently before the Court on Smith's motion for summary judgment. For the reasons discussed below, Smith's motion for summary judgment will be **DENIED IN PART** and **GRANTED IN PART.**

### FACTS

In 1991 or 1992, the GBI began an investigation of alleged corruption in the Camden County Sheriff's Department. In July of 1992, Cooper and his wife (the "Coopers") gave information to the GBI which they believed would be kept confidential. The Coopers' conversations with the GBI took place at the Coopers' home. According to the Coopers, Smith and others in the Department found out about the Coopers' cooperation with the GBI. After the Coopers spoke to the GBI, the Camden County Grand Jury returned an indictment against Smith. Smith was reelected as Sheriff of Camden County soon after his indictment.[1] Following Smith's reelection, Cooper began to hear rumors that he would no longer have a job when Smith's new term began in 1993.

Seeking clarification of his job situation, Cooper wrote a letter to Major Charles A. Easterling ("Easterling"), the Acting Chief Deputy of the Department, on November 24, 1992. In Easterling's response, dated December 9, 1992, he declined to give Cooper a promotion or assurances of job security. On December 17, 1992, Cooper wrote to Smith in response to Easterling's letter, stating in part:

I freely admit that my "attitude" toward the major and the Department "steadily

---

1. The indictment against Smith was later dis-missed.

declined" in recent months, and that I find it generally distasteful and unpleasant to "associate with the administration of which" I am most certainly a member.

.   .   .   .   .

I have always believed that we must not use our positions for personal gain, and that we must at least try to treat everyone fairly and equally. But these ideals, beliefs and principles seem to have had no place at the Department in recent months.

I have become aware of many practices and occurrences at the Department which have damaged my morale and that many [sic] other deputies who are either presently employed or who were previously employed.

It would take several hours and an empty notebook to list them all. But I do believe I owe it to you and the major to mention a few of the most upsetting examples.

In violation of your own rules and regulations, male and female inmates have been allowed to have contact visits at the jail. Some inmates whose driver's license has [sic] been suspended are allowed to drive marked sheriff's department cars. Other inmates, who have been sentenced to long prison terms for such crimes as aggravated child child [sic] molestation and possession of cocaine with intent to distribute, are kept at the jail and are not sent off to prison to serve their time. Some deputies, while on active duty, have been allowed to work at private residences and to gather oysters for parties thrown by you for the department and some of your political supporters.

.   .   .   .   .

It should not be necessary for me to point out that these chickens are eventually coming home to roost, and you and the county could be sued and lose. Even a cat has only nine lives.

Cooper sent copies of this letter to Easterling and five members of the Camden County Commission.

Smith has stated that he considered Cooper's December 17 letter to be a letter of resignation. On December 29, 1992, Smith told Cooper that his commission as deputy sheriff would not be renewed for the following year. None of the other employees of the Department who talked to the GBI was dismissed or "not renewed."

Cooper filed this suit on May 28, 1993, alleging that he had been dismissed in retaliation for exercising his right to free speech, in violation of the First Amendment to the United States Constitution. Cooper further alleged that he had been denied equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution.

On December 27, 1993, Smith filed his motion for summary judgment, arguing that he should prevail on the First Amendment Claim because: 1) even if Cooper spoke out on matters of public concern, Smith's decision not to renew Cooper's commission was justified by legitimate reasons; and 2) Cooper has failed to produce evidence showing that his speech was a substantial factor in Smith's decision not to renew his commission. Smith argues that he should prevail on the Equal Protection claim because Cooper has not shown that he was similarly situated to any other officers.[2]

### DISCUSSION

The vagueness of Cooper's complaint and his failure to organize his allegations into counts render it somewhat difficult to identify Cooper's legal theories. Clearly, Cooper relies upon his right not to be dismissed from public employment as a result of speech protected by the First Amendment. Almost as clearly, Cooper asserts a claim under the Equal Protection Clause of the Fourteenth Amendment. Defendant seems to believe that Cooper has asserted a Due Process claim. The Court finds that this claim, if intended at all, has not been stated with sufficient definiteness to warrant consideration.

2. Smith also argues that Cooper did not have a protected property interest in his employment because he was an at-will employee. This argument need not be addressed because the Court has determined that Cooper has not sufficiently alleged a Due Process claim.

## I. Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). Summary judgment is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed. R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09.

## II. Section 1983

Section 1983 provides a civil action for persons who claim that their rights under the federal constitution or laws have been violated under color of state law. "[T]he § 1983 remedy broadly encompasses violations of federal as well as constitutional law." *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980).[3] In the present action, Cooper alleges a § 1983 claim based on violations of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

### A. First Amendment Claim

In *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court attempted to strike a balance between the public employee's free speech rights and the public employer's interest in regulating employee speech. "The problem in any case is to arrive at a balance between the interests of the [public employee] as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1734–35.

Although the public employee plaintiff in *Pickering* was a teacher, the Courts of Appeals have applied the *Pickering* balancing tests to law enforcement officers as well. In *Bryson v. City of Waycross,* 888 F.2d 1562, 565 (11th Cir.1989), the Eleventh Circuit Court of Appeals gave the following summary of the *Pickering* principle when applying the *Pickering* test to a police captain's free speech claim:

> [a]lthough the law is well-established that the state may not demote or discharge a public employee in retaliation for speech protected under the first amendment, a public employee's right to freedom of speech is not absolute.

888 F.2d at 1565.

The *Bryson* Court set out a four part test to be used in determining whether a public employee may properly be discharged because of his speech. First, the court must determine whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Bryson,* 888 F.2d at 1565 (citations omitted).

Second, if the speech relates to a matter of public concern, the court must apply *Pickering's* balancing test, "weighing the employee's first amendment interests against 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Bryson,* 888 F.2d at 1565 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35).

Third, if the employee prevails on the balancing test, the fact-finder must determine "whether the employee's speech played a

---

**3.** Section 1983, in pertinent part, provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress. 42 U.S.C. § 1983.

'substantial part' in the government's decision to ... discharge the employee." *Bryson*, 888 F.2d at 1565. *See also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Fourth, "if the employee prevails by showing that the speech was a substantial motivating factor in the state's employment decision, the state must prove by a preponderance of the evidence that 'it would have reached the same decision ... even in the absence of the protected conduct.'" *Bryson*, 888 F.2d at 1566 (quoting *Mt. Healthy*, 429 U.S. at 286, 97 S.Ct. at 575). The fourth step is considered to be a "but for" test. The employer must show that "its legitimate reason, standing alone, would have induced it to make the same decision." *Bryson*, 888 F.2d at 1566 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252, 109 S.Ct. 1775, 1792, 104 L.Ed.2d 268 (1989)).[4]

In the context of this case, at least two separate expressions of speech must be considered. One is Cooper's conversations with the GBI. The second is Cooper's December 17 letter.

**1. Step One: Matters Of Public Concern**

■ It is clear that Cooper's conversations with the GBI were related to matters of public concern, because those conversations were about the alleged misconduct of an elected official. The December 17 letter combined some matters of public concern (a list of Cooper's allegations against Smith and the Department) with some speech less related to public concern (Cooper's expressions of hostility toward Smith and the Department).

In that letter, Cooper stated, "I find it generally distasteful and unpleasant to 'associate with the administration of which' I am most certainly a member." (*See* Defendant's Exhibit C). That statement is not so much a protected "whistleblowing" statement as an expression of disrespect for his employer. The Court holds that Cooper's hostility was not a matter of public concern. For purposes of the remaining steps in this analysis,

the December 17 letter's allegations against the Department (which are matters of public concern) will be considered separately from the portion of the letter dealing with Cooper's negative attitude (which is not a matter of public concern).

**2. Step Two: The *Pickering* Balancing Test**

■ Having determined that some of the disputed speech was related to matters of public concern, the Court must apply the *Pickering* balancing test. The Eleventh Circuit has set out several factors which should be considered when applying this test. These factors include: 1) the manner, time and place of the speech at issue; 2) the context in which the speech was made; and 3) whether the speech at issue impeded the government's ability to perform its duties efficiently. *Bryson*, 888 F.2d at 1567 (quoting *Morales v. Stierheim*, 848 F.2d 1145 (11th Cir.1988), *cert. denied sub nom. Leon v. Avino*, 489 U.S. 1013, 109 S.Ct. 1124, 103 L.Ed.2d 187 (1989)).

**a. Conversations With The GBI**

With respect to Cooper's conversations with the GBI, the *Pickering* balance falls in his favor. The manner, time and place of this speech were reasonable, because Cooper talked to the GBI at his home, presumably at a time when he was not on duty. Nothing about the context of those conversations weighs against Cooper. Further, Smith has not shown that Cooper's conversations with the GBI caused any disruption in the Department independent of the disruption caused by the GBI investigation that encompassed those conversations.

**b. The December 17 Letter**

The *Pickering* balancing test need not be applied to the portions of the letter expressing Cooper's bad attitude about the Department, because those portions are not matters of public concern.

---

**4.** The Civil Rights Act of 1991, 42 U.S.C. § 2000e–2(m), modified the "mixed motive" holding of *Price Waterhouse* as applied to Title VII cases. Because 42 U.S.C. § 2000e–2(m) expressly limits its coverage to "race, color, religion, sex, and national origin," however, there is no reason to believe that this modification should be applied in First Amendment cases under § 1983.

As to the portions of the letter listing allegations against Smith and the Department, the "manner, time and place" factor weighs in favor of Cooper. The manner, time and place of this speech were reasonable, because writing letters was a non-disruptive method of speaking out and the addressees were public officials who had a legitimate interest in the subject matter of the letters.

The second factor requires consideration of the "context" of Cooper's speech. The context of Cooper's December 17 letter is somewhat damaging to him because the letter was provoked by the Sheriff's Department's refusal to promote Cooper or to give him assurances of continued job security. However, this factor alone is not determinative.

The third factor is whether the disputed speech impeded the government's ability to perform its duties efficiently. When the *Bryson* court reached this factor of the *Pickering* balancing test, it considered "whether the statement impairs discipline by superiors or harmony among co-workers, [or] has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary." *Bryson*, 888 F.2d at 1567 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987)).

In *Bryson*, Plaintiff, a police captain, filed a Memorandum of Complaint with the city manager alleging that the Chief of Police had stolen whiskey from the police department evidence room. Bryson also made verbal complaints about the Chief's misconduct. Thereafter, the Chief reassigned Bryson to perform duties that Bryson viewed as less significant than his prior duties. The City of Waycross contended that Bryson was reassigned because of his disruptive behavior and failure to perform his duties adequately. 888 F.2d at 1564. Under these facts, the Eleventh Circuit upheld the trial court's ruling that Bryson's speech was so disruptive that the City's interest in obtaining efficient police protection outweighed Bryson's speech interest. *Id.* at 1567.

Similarly, in *Breuer v. Hart*, 909 F.2d 1035 (7th Cir.1990), Plaintiff was a deputy sheriff whose relationship with the defendant sheriff soured after the sheriff and Breuer's sister obtained a divorce. Thereafter, Breuer and others in the department became upset about the sheriff's perceived favoritism toward a female employee. Breuer confronted the sheriff over allegations that the sheriff had paid the female employee unearned overtime pay and sick leave. After that discussion, Breuer began to catalogue the female employee's work habits and compensation and held frequent discussions with other deputies opposed to the sheriff's policies.

Breuer took information he discovered (including additional allegations that the sheriff had taken televisions and microwave ovens from the evidence locker for his personal use) to a State's Attorney. Breuer's charges were investigated by the Illinois Department of Criminal Investigation ("DCI"), but the DCI concluded that it could not base a criminal prosecution on those allegations. Three days after that decision was made, the sheriff dismissed Breuer. 909 F.2d at 1036–1037.

Based upon these facts, the Seventh Circuit determined that the sheriff's interest in maintaining an orderly department outweighed Breuer's free speech interest. When making that decision, the court stated:

> A sheriff running a small police operation (here, 16 members) is not constitutionally required to ignore such disruptive dissension at the risk of allowing the Department to fall into disorder. Using the approach urged by Breuer would insulate even the most disruptive employee from termination so long as the employee makes an allegation not frivolous on its face to appropriate authorities before his termination.

*Id.* at 1040.

The current case is similar to *Bryson* and *Breuer* in that all three cases involve a plaintiff's potentially legitimate grievances related to matters of public concern. *Breuer* is particularly similar to the current case because both cases involve relatively small sheriff's departments. The quoted portion of *Breuer*, therefore, provides some support for Smith's position.

A major distinction exists, however, between the current case and *Bryson* and *Breuer*. The "speech" of the plaintiffs in

*Bryson* and *Breuer* created significant, direct disruption in their workplaces; the allegations in Cooper's letter apparently did not. The main disruptive element in *Bryson* and *Breuer* was the plaintiffs' use of working time and on the job access to other employees for the expression of their "speech." In fact, the *Bryson* Court stated that Bryson's speech would have been protected if he had confined his complaints to the proper time, place, and manner. 888 F.2d at 1567. In the current case, Cooper did confine his complaints to the proper "time, place and manner."[5]

If the allegations in Cooper's letter had a potentially disruptive element, that element was the *content* of the allegations. In the absence of any serious argument that those allegations were false, however, the content of the allegations is not the kind of disruption that should weigh the balance against Cooper. The *Pickering* Court "unequivocally reject[ed]" the defendant's contention that substantially correct statements on matters of public concern could furnish grounds for dismissal if sufficiently critical in tone. 391 U.S. at 570, 88 S.Ct. at 1735–36.[6] Therefore, the allegations in Cooper's letter are likely to enjoy protection if they are largely true. Smith has not made a serious attempt to show that the allegations were false.

The Court finds, therefore, that the third factor (whether Cooper's speech impeded the employer's ability to perform public duties) does not swing the balance against Cooper. Cooper's free speech interest in making allegations against the Department in his December 17 letter outweighed Smith's and the Department's interests in ridding themselves of an employee who would make such allegations.

### 3. Step Three: Whether Protected Speech Played A Substantial Part In Smith's Decision To Fire Cooper

The third element is for the finder of fact to decide. At trial, the finder of fact will decide whether Cooper's protected speech (his conversations with the GBI and allegations in the December 17 letter) played a substantial part in Smith's decision not to renew Cooper's commission.[7]

### 4. Step Four: Whether Smith Would Have Dismissed Cooper In The Absence Of The Protected Conduct

The fourth element, like the third, will be judged by the finder of fact. The finder of fact will decide whether Smith would have dismissed Cooper but for his conversations with the GBI and his list of allegations in the December 17 letter.

### B. Equal Protection Claim

■ Cooper contends that he was treated more harshly than other employees whose behavior was much worse than his. Without making a determination on that precise issue, the Court holds that Cooper has not proven that any other employees were similarly situated to him. He has not provided any evidence showing that other employees publicly expressed distaste for their jobs and their

---

5. Smith alleges that Cooper did, at some point, engage in disruptive on-the-job activities such as copying and taking records. This behavior, however, is not relevant to this motion; Cooper does not contend that he was dismissed because of this activity. Cooper contends that he was dismissed because of his conversations with the GBI and the allegations in his December 17 letter.

6. The *Pickering* Court did note that there might be situations in which the requirement of a "personal and intimate" relationship between superior and subordinate or an overriding need for confidentiality would justify a public employer's decision to fire a public employee for making true statements on matters of public concern. 391 U.S. at 570 n. 3, 88 S.Ct. at 1735–36 n. 3. However, this Court is not convinced that either exception applies to Cooper.

7. The issue here is Smith's *actual* motivation for not renewing Cooper's commission. When undertaking the *Pickering* analysis, the Court decides whether the public employer would have been justified in dismissing the public employee *because of the speech that the employee contends is protected.* Here, the Court has decided that Smith was not so justified. The Court does not, however, use the *Pickering* analysis to decide whether the plaintiff has done *anything* that would justify a decision to dismiss him. It is the role of the finder of fact at trial, to decide what the defendant's *actual* motivation was for dismissing the plaintiff. The defendant's liability then turns on whether his *actual* motivation violated plaintiff's constitutional rights.

superiors, or wrote letters that could reasonably be interpreted as letters of resignation. In the absence of such evidence, an equal protection claim is not appropriate. Accordingly, Smith prevails as a matter of law on Cooper's equal protection claim.

## CONCLUSION

For the foregoing reasons, summary judgment is hereby **DENIED** with respect to Cooper's First Amendment Claim, and partial summary judgment is hereby **GRANTED** in favor of Smith with respect to Cooper's Equal Protection claim.

**SO ORDERED.**