**Vashti LOVE, et al., Plaintiffs,**

v.

**CITY OF CHICAGO BOARD OF EDUCATION, et al., Defendants.**

No. 97 C 8786.

United States District Court, N.D. Illinois, Eastern Division.

May 28, 1998.

Gerald A. Goldman, Arthur R. Ehrlich, Jonathan C. Goldman, Goldman & Ehrlich, Chicago, IL, for Plaintiffs.

Marilyn F. Johnson, Chicago Bd. of Educ., Chicago, IL, Patrick Dennis Riley, Bd. of Educ. of City of Chicago, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Milton Albritton's motion to dismiss plaintiffs Vashti Love, Dr. Claudine Moore, and Willie Edwards' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the court denies defendant's motion.

### I. BACKGROUND

Plaintiffs Vashti Love ("Love"), Dr. Claudine Moore ("Moore"), and Willie Edwards ("Edwards") have filed suit against two defendants: Milton Albritton ("Albritton") and the City of Chicago Board of Education [1] ("the Board"). All three plaintiffs are employees of Wadsworth Elementary School ("Wadsworth"). The Board is the governing body of the school district. See 105 ILL. COMP. STAT. § 5/34–1. Albritton is the Principal of Wadsworth.

Plaintiffs' complaint makes the following allegations which, for the purpose of ruling on this motion, are assumed to be true. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). During the years of 1996 and 1997, plaintiffs made comments and complaints regarding defendants' improper operation and implementation of the special education inclusion program and the treatment and segregation of disabled students at Wadsworth. Plaintiffs also complained that Albritton was interfering with their ability and efforts to implement special education programs and to perform their duties and assignments with the learning disabled students.

In response to plaintiffs' comments and complaints and in an effort to keep plaintiffs from continuing to speak out, defendants retaliated against plaintiffs. The acts of retaliation included: (1) using inaccurate and false performance evaluations or complaints; (2) reprimanding and disciplining plaintiffs; (3) canceling programs or preventing some plaintiffs from teaching summer school; (4)

1. Plaintiffs named the "City of Chicago Board of Education" as a defendant. However, the "Chicago School Reform Board of Trustees" is the proper name of this defendant. 105 ILL. COMP. STAT § 5/34–1.

making false accusations; and (5) encouraging other teachers and students to act hostilely toward plaintiffs.

In response to defendants' alleged acts of retaliation, plaintiffs filed a three-count complaint in this court, alleging that defendants' conduct violated 42 U.S.C. § 1983. Count I of the complaint is Love's claim against defendants; Count II is Moore's claim against defendants; and Count III is Edwards' claim against defendants.[2] The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

This matter is currently before the court on defendant Albritton's motion to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6). Albritton argues that plaintiffs have failed to state a claim because they have failed to allege that their speech was constitutionally protected.

## II. *DISCUSSION*

### A. *Standard for deciding a Rule 12(b)(6) motion to dismiss*

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport,* 699 F.Supp. 1283, 1285 (N.D.Ill.1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED. R. CIV. P. 12(b)(6); *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B. *§ 1983 First Amendment retaliation claims*

In the complaint, each of the plaintiffs alleges that defendants violated § 1983 by retaliating against plaintiffs for exercising their First Amendment rights. Albritton has moved to dismiss each of the claims, arguing that plaintiffs have failed to allege that their speech was constitutionally protected.

For the sake of clarity, the court's opinion on this issue will be in four parts. Part 1 lays out the general law that the court must apply in analyzing whether plaintiffs have stated a § 1983 First Amendment retaliation claim. Part 2 applies that law to Love's claim against defendants. Part 3 applies that law to Moore's claim against defendants. Finally, Part 4 applies that law to Edwards' claim against defendants.

### 1. The law governing a § 1983 First Amendment retaliation claim

To state a claim for relief under section 1983, the plaintiff must allege (1) that the defendants deprived the plaintiff of a federally protected right and (2) that the defendant acted under color of state law. *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996). In this case, Albritton does not argue that plaintiffs have not alleged that defendants acted under color of state law. Albritton's only argument is that plaintiffs have not alleged that defendants deprived plaintiffs of a federally protected right. The court, therefore, limits its discussion to that issue.

In their complaint, plaintiffs allege that defendants violated their First Amendment rights by retaliating against them for engaging in constitutionally protected speech. In order to state a § 1983 First Amendment retaliation claim, the plaintiff must allege (1) that the speech in which the plaintiff engaged was constitutionally protected under the circumstances and (2) that the defendant retaliated against the plaintiff because of the plaintiff's speech. *Gustafson v. Jones,* 117 F.3d 1015, 1018 (7th Cir.1997); *Barkoo v. Melby,* 901 F.2d 613, 617 (7th Cir.1990). The plaintiff does not satisfy the above two requirements by including conclusory allegations in the complaint; rather, the

---

**2.** Each of the individual counts contains allegations of what the particular plaintiff's speech was and what actions were taken against that plaintiff. For the sake of brevity and clarity, the court will address those specific allegations in the context of examining whether that plaintiff has stated a § 1983 First Amendment retaliation claim. *See infra* Part II.B.2–4.

plaintiff must allege facts sufficient to show that the above two requirements are satisfied. *See Gustafson,* 117 F.3d at 1018–19; *Caldwell v. City of Elwood,* 959 F.2d 670, 672 (7th Cir.1992).

In this case, Albritton does not argue that plaintiffs have not alleged that defendants took the alleged actions because of plaintiffs' speech. Albritton only argues that plaintiffs have not adequately alleged that their speech was constitutionally protected. This opinion, therefore, limits itself to that issue.

■ Determining whether a plaintiff's speech is constitutionally protected requires the court to make a two-part determination. *See Khuans v. School Dist. 110,* 123 F.3d 1010, 1014 (7th Cir.1997). The court first must determine whether the plaintiff's speech involves a matter of public concern. *Id.; Breuer v. Hart,* 909 F.2d 1035, 1037 (7th Cir.1990). If the speech does involve a matter of public concern, the court must conduct a balancing test to determine whether the government's interest, as an employer, in providing services efficiently outweighs the plaintiff's interest in expressing himself. *Khuans,* 123 F.3d at 1015.

■ To determine whether the plaintiff's speech involved a matter of public concern, the court must examine the content, form, and context of the speech. *Id.* at 1014. Content is the most important factor. *Id.; Breuer,* 909 F.2d at 1039. Speech on a matter of public concern is speech which relates to a matter of political, social, or other concern of the community. *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Khuans,* 123 F.3d at 1014–15. Speech which is centered on a personal dispute or grievance with the employer is not speech on a matter of public concern. *Campbell v. Towse,* 99 F.3d 820, 827 (7th Cir.1996). However, the mere fact that the plaintiff has a personal stake in expressing his views does not remove the plaintiff's expression from First Amendment protection. *Id.*

If the speech does not involve a matter of public concern, the defendant's actions are not subject to judicial review. *Breuer,* 909 F.2d at 1037. If the speech is on a matter of public concern, the court must conduct a balancing test to determine whether "the employee's interest in expressing herself on this matter ... [is] outweighed by any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services that it performs through its employees." *Waters v. Churchill,* 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); *see also Khuans,* 123 F.3d at 1015.

To conduct the balancing test, the court must determine whether the public employer has shown a convincing reason to forbid the speech. *Gustafson,* 117 F.3d at 1019. Factors the court should consider when attempting to arrive at a proper balance between the employee's and the employer's competing interests are:

(a) whether the speech impaired discipline by superiors or harmony among co-workers; (b) whether the speech had a detrimental impact on close working relationships for which personal loyalty and confidence are necessary; (c) whether the speech impeded the performance of the speaker's duties; and (d) whether the speech interfered with the regular operation of the enterprise.

*Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *see also Campbell,* 99 F.3d at 829; *Breuer,* 909 F.2d at 1039–40. The court must not consider the factors in a vacuum but must consider the factors in "the context in which the underlying dispute arose." *Campbell,* 99 F.3d at 820.

■ It will often be impossible for the court to conduct the balancing test when analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) because it is not the plaintiff's burden to plead the employer's possible justifications and the reasons why those justifications are not convincing. *See Gustafson,* 117 F.3d at 1019 (explaining that it is the defendant's burden to raise justification as an affirmative defense). However, there are cases where the plaintiff pleads himself out of court by pleading facts sufficient to show that the employer's interests would outweigh the employee's interests. *Id.*

### 2. Count I—Love's claim against defendants

■ The court first addresses Count I, which is Love's claim against defendants. In addition to the general allegations recited above, *see supra* Part I, Count I makes the following specific allegations: From October of 1994 through July of 1997, Love made specific complaints verbally and in writing regarding defendants' failure to implement the special education inclusion program and Albritton's active opposition to these programs. In retaliation and in an effort to keep Love from speaking out, defendants (1) encouraged staff members to insult, intimidate, and verbally attack Love at meetings; (2) encouraged teachers and students to harass and insult Love; (3) falsely criticized and documented Love after a classroom visitation; (4) interfered with Love's ability to administer the I.T.B.S. test in May of 1997; (5) threatened her summer school employment; (6) improperly lowered her performance rating during June of 1997; (7) removed Love from the Upper Division Inclusion Program in June of 1997; and (8) issued a tardy report which falsely accused Love of numerous incidents of tardiness.

The court finds that a reasonable inference from Love's allegations is that her speech involved a matter of public concern. The implementation and operation of the inclusion program at Wadsworth is "undoubtedly a question of public importance." *See Wales,* 120 F.3d at 84; *see also Jackson v. Chicago Sch. Reform Bd. of Trustees,* No. 96 C 4277, 1997 WL 548555, at *3 (N.D.Ill. Sept.3, 1997) (explaining that "courts have been much more willing to grant First Amendment protection to complaints by public employees that arise not from an individual dispute but from a desire to reform the system"). It is true that Love alleges that her speech included comments and complaints regarding Albritton's opposition to the inclusion programs. However, a reasonable inference from this allegation is that Love was speaking out about Albritton's actions because they were affecting the inclusion program and not because they were affecting her personally.

The court also finds that Love has not pleaded herself out of court by including facts which would show that Love's interest in expressing herself was outweighed by any injury caused to defendants' interests as an employer. It is true that Love alleges that defendants encouraged staff members "to insult, intimidate, and verbally attack" her at meetings. However, while there was allegedly a disruption at the school meetings, it was a disruption caused not by Love's alleged speech, but a disruption caused by defendants' reaction to Love's speech. It may be that defendants were entitled to take whatever action they did in response to Love's speech; however, the court simply cannot make that determination at this point.

In sum, the court finds that Love's allegations are sufficient to withstand Albritton's motion to dismiss. A reasonable inference from the allegations is that Love's speech was constitutionally protected. It would be premature for the court to find otherwise. Accordingly, the court denies Albritton's motion to dismiss Count I of plaintiffs' complaint.

### 3. Count II—Moore's claim against defendants

The court next addresses Count II, which is Moore's claim against defendants. In addition to the general allegations set forth above, *see supra* Part I, Count II makes the following specific allegations: In February of 1995, Moore spoke out against Albritton at one of the Board's open meetings about his treatment of Moore and the other plaintiffs. In March of 1995, Albritton gave Moore a warning resolution and lowered her performance rating in violation of Board procedures. In May of 1996, Moore notified the Board about Albritton's improper participation in the Local School Council election. In June of 1996, defendants suspended Moore for five days and improperly lowered her performance rating. In May of 1997, Moore spoke out about problems and wrongdoing at the Wadsworth Child Parent Center. Albritton retaliated against Moore by closing her position and lowering her evaluation by fabricating nineteen alleged weaknesses in Moore's performance. On June 5,

1997, Moore spoke out at an open meeting with the Board about problems with the inclusion program at Wadsworth. In August of 1997, Albritton falsely accused her of being tardy and issued a tardy report.

■ Viewing Moore's allegations in total, the court finds Moore has sufficiently alleged that her speech involved a matter of public concern. As stated above, the implementation and operation of the inclusion program at Wadsworth is "undoubtedly a question of public importance." *See Wales,* 120 F.3d at 84; *see also Jackson,* 1997 WL 548555, at *3. It is true that Moore alleges that she spoke out in February of 1995 at one of the Board's open meetings about the way that Albritton had treated Moore and the other plaintiffs. That allegation standing alone is insufficient to show that Moore's speech involved a matter of public concern. However, the balance of Moore's allegations relate to the wrongdoing that was allegedly occurring at Wadsworth. In addition, Moore's speech took place at open board meetings. Thus, it is the allegations taken as a whole which allow the reasonable inference that Moore's speech concerned a matter of public concern and not simply a personal dispute between her and defendants.

The court also finds that Moore has not pleaded herself out of court by including facts which would show that Moore's interest in expressing herself was outweighed by any injury caused to defendants' interests as an employer. There is nothing in Moore's allegations from which the court can infer that Moore's speech impaired discipline, created disharmony, had a detrimental impact on any necessarily confidential relationships, affected Moore's performance, or interfered with the regular operation of the school. It may be that defendants were entitled to take the actions that they allegedly did; however, the court cannot make that determination at this stage of the litigation.

In sum, the court finds that Moore's allegations are sufficient to withstand Albritton's motion to dismiss. A reasonable inference from the allegations is that Moore's speech was constitutionally protected. It would be premature for the court to find otherwise. Accordingly, the court denies Albritton's motion to dismiss Count II of plaintiffs' complaint.

**4. Count III—Edwards' claim against defendants**

The court next addresses Count III, which is Edwards' claim against defendants. In addition to the general allegations set forth above, *see supra* Part I, Count III makes the following allegations: In November of 1996, Edwards supported one of the plaintiffs at a staff meeting in voicing concerns and asking questions regarding the special education program at Wadsworth. Edwards also notified Albritton in writing about the improper treatment of some of the special education teachers at the meeting. Defendants retaliated by encouraging teachers to verbally attack Edwards and interfere with his ability to tutor some special education students. In January of 1997, Edwards submitted documentation to the Board complaining about the verbal attacks and the interference with his ability to work with the special education students. Albritton subsequently precluded Edwards from working with some students, attacked him verbally, and gave him demeaning assignments. In March of 1997, Edwards spoke with an investigator regarding problems with the special education inclusion program at Wadsworth. Defendants then reprimanded Edwards and made several false accusations about his relationship with students.

Edwards' claim against defendants presents the closest question as to whether the allegations support a reasonable inference that the speech involved a matter of public concern. Edwards' allegations indicate that he spoke out about the way that he and the other plaintiffs were treated. This speech involves a personal dispute, not a matter of public concern. However, other of Edwards' allegations indicate that his speech concerned the implementation and operation of the inclusion program at Wadsworth, which is clearly a matter of public importance. Further, the personal dispute seemed to arise because Edwards voiced concerns about the inclusion program. Edwards' speech was not just complaints made to Albritton personally; rather, Edwards spoke out at open meetings

and with an independent investigator. Viewing these allegations in total, the court finds that Edwards has sufficiently alleged that his speech falls closer to the "public" than the "private" end of the spectrum, *see Wales*, 120 F.3d at 84, and, thus, that his speech involved matters of public concern.

The court also finds that Edwards has not pleaded himself out of court by including facts which would show that his interest in expressing himself was outweighed by any injury caused to defendants' interests as an employer. There is nothing in Edwards' allegations from which the court can infer that Edwards' speech impaired discipline, created disharmony, had a detrimental impact on any necessarily confidential relationships, affected Edwards' performance, or interfered with the regular operation of the school. It may be that defendants were entitled to take the actions that they allegedly did; however, the court cannot make that determination at this stage of the litigation.

In sum, the court finds that Edwards' allegations are sufficient to withstand Albritton's motion to dismiss. A reasonable inference from the allegations is that Edwards' speech was constitutionally protected. It would be premature for the court to find otherwise. Accordingly, the court denies Albritton's motion to dismiss Count III of plaintiffs' complaint.

### III. *CONCLUSION*

For the foregoing reasons, the court denies defendant Milton Albritton's motion to dismiss plaintiffs' complaint. Defendants are given until June 11, 1998 to file an answer to plaintiffs' complaint.