**Michael J. HARDING, Plaintiff,**

v.

**Edward J. ROSEWELL, Cook County Treasurer, James A. Fuglsang, Alan H. Kwit, Richard J. Owens, Rodney M. Zobjeck, and the County of Cook, Illinois, Defendants.**

No. 96 C 2615.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 29, 1998.

---

**12.** Given this conclusion, we need not address Block's remaining arguments.

William D. Dallas, Peter Gregory Frezados, Regas, Frezados & Harp, Chicago, IL, for Plaintiff.

Thomas M. Burnham, Melissa K. Reardon Henry, Anne L. Aslin, Paul Anthony Castiglione, State's Atty. of Cook County, Chicago, IL, Joseph E. Tilson, Bates, Meckler, Bulger & Tilson, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Michael Harding filed a five count complaint against the defendants alleging viola-

tions of 42 U.S.C. § 1983, retaliatory harassment and discharge, slander, and breach of contract. The defendants moved for summary judgment on all counts. The parties also filed related motions. The defendants moved to strike certain paragraphs of Mr. Harding's 12(N) Statement, for leave to file their answer *nunc pro tunc* to August 11, 1997, and to amend their answer. Mr. Harding moved to strike document number 904–912 and to bar defendants from using document number 890–903. For the reasons set forth below, the defendants' motion for summary judgment is granted in part and denied in part, their motion to strike 12(N) paragraphs is denied, their motion to file their answer *nunc pro tunc* is granted, and their motion to amend their answer is denied. Mr. Harding's motion to strike document number 904–912 is denied as moot and his motion to bar the use of document number 890–903 is granted.

### Background

Mr. Harding returned to the Cook County Treasurer's Office ("Treasurer's Office") in 1993 as an Assistant Treasurer reporting to Alan Kwit.[1] (12(N) St. ¶ 4). Edward Rosewell is the Treasurer of Cook County ("Mr. Rosewell" or "Treasurer"), James Fuglsang is the Chief Deputy Treasurer, Mr. Kwit is a financial control officer for the Treasurer's Office, Richard Owens was an assistant general counsel to the Treasurer, and Rodney Zobjeck was an employee of the Treasurer's Office. (12(M) St. ¶¶ 3–7).

Most of the facts surrounding this case are contested.[2] Mr. Harding says that in mid– 1993, he discovered that employees in the Treasurer's Office, specifically Mr. Kwit and Kelly Napientek, were falsifying their time records. (12(N) St. ¶ 9). He states that in late 1993 and thereafter, he brought this information to the attention of the Treasurer

1. Mr. Harding previously worked in the Treasurer's Office from 1980 until he resigned in 1983 to work in the Cook County Comptroller's Office. (12(N) St. ¶¶ 2–3).

2. The defendants moved to strike numerous paragraphs (and some corresponding exhibits) in Mr. Harding's 12(N) Statement on the grounds

that they are not concise, present immaterial facts, rely upon inadmissible evidence, rely upon Mr. Harding's self-serving affidavit and testimony, and mischaracterize the testimony. The motion is denied. Any concerns about facts relied on in this opinion are addressed below as they arise.

and requested an investigation. (*Id.* ¶ 11). He also states that he informed Mr. Fuglsang, Mr. Kwit, and Mr. Owens of the falsification. (*Id.* ¶¶ 13, 17, 27). He alleges that he was harassed and then terminated in retaliation for this speech.

Mr. Harding states that on February 8, 1995 he slipped and fell in the County Building while at work. (*Id.* ¶ 66). It is undisputed that he did not work from February 9, 1995 until April 24, 1995, (*Id.* ¶ 67), and that on April 10, 1995, he filed a workers' compensation claim with the Illinois Industrial Commission, (12(M) St. ¶ 32). He alleges that he was harassed and terminated because he filed the workers' compensation claim and that defamatory statements were made to the effect that he had filed a false claim.

In the first week of September, 1995, Mr. Harding states that he began cooperating with the Federal Bureau of Investigation ("FBI") in its investigation of the Treasurer's Office. (12(N) St. ¶ 81). Mr. Harding alleges that he was harassed and fired in retaliation for his cooperation.

Mr. Harding was fired on October 23, 1995. (12(M) St. ¶ 21). He subsequently filed a claim for unemployment insurance with the Illinois Department of Employment Security ("IDES"). (*Id.* ¶¶ 30–31; 12(N) St. ¶ 190). He claims that the defendants failed to pay him for compensatory time accrued prior to his termination and improperly protested his unemployment insurance claim on the grounds of misconduct.

### Summary Judgment Standard

Summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the court must consider the facts in the light most favorable to the non-

moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This standard is the same for all cases including employment discrimination cases. *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1396 (7th Cir. 1997).

### Count I

■ To bring a § 1983 claim, Mr. Harding must establish that: (1) he held a constitutionally protected right; (2) he was deprived of this right in violation of the Constitution; (3) the defendants intentionally caused this deprivation; and (4) the defendants acted under color of state law. *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir.1993). Mr. Harding alleges that Cook County and Mr. Rosewell, Mr. Fuglsang, Mr. Kwit, and Mr. Owens, in their individual and official capacities,[3] violated his procedural due process and first amendment rights.[4]

■ Before reaching the merits of this count, I must address whether Cook County, Mr. Kwit, and Mr. Owens can be liable for any deprivation of Mr. Harding's due process and first amendment rights.[5] Cook County may be held liable for violating the civil rights of a person under § 1983 in three instances: (1) it has an express policy that, when enforced, causes a constitutional violation; (2) there is a widespread practice that, although not expressly authorized by the County, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) the alleged constitutional injury is caused by a person with final policy-making authority. *Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734–35 (7th Cir.1994). Mr. Harding argues that in the defendants' answer to the initial complaint, they admitted that Cook County had a policy of granting authority to Mr. Rosewell to make personnel decisions related to employees in the Treasurer's Office. He argues

---

3. The suits against the individuals in their official capacities are actually suits against the Treasurer's Office. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (stating that official capacity suits are suits against the governmental entity of which a government officer is an agent).

4. Mr. Harding states that he is not asserting an equal protection claim in Count I, and thus, the defendants' motion for summary judgment on this claim is denied as moot.

5. The defendants admit that the Treasurer and his deputy, Mr. Fuglsang, in their individual and official capacities, are potentially liable.

that Cook County is liable for Mr. Rosewell's actions pursuant to that policy.

Since the defendants' initial answer, Mr. Harding filed an amended complaint and the defendants filed an amended answer denying any such policy. Regardless of the defendants' admission or denial of any policy, the Treasurer is authorized by statute, not by delegation of Cook County's authority, to make personnel decisions for the Treasurer's Office. *See, e.g.,* 55 ILCS 5/3–10005 ("[The treasurer] shall appoint his deputies, assistants and personnel to assist him in the performance of his duties."); 55 ILCS 5/3–10005.1 ("The treasurer shall control the internal operations of his office . . . ."); 55 ILCS 5/3–10005.4 ("Compensation of deputies and employees . . . shall be fixed by the treasurer . . . ."). Since no policy is implicated, Cook County cannot be liable for the Treasurer's personnel decisions, including his decision to fire Mr. Harding and his decision (if any) to protest Mr. Harding's unemployment insurance claim on the grounds of misconduct.[6] *Cf. Thompson v. Duke,* 882 F.2d 1180, 1187 (7th Cir.1989) (finding that Cook County was not liable when it had no authority to train or set policy for employees under the supervision and control of the Sheriff of Cook County, an independently-elected constitutional officer), *cert. denied,* 495 U.S. 929, 110 S.Ct. 2167, 109 L.Ed.2d 496 (1990). The Treasurer's Office is the governmental body that is responsible for any retaliatory discharge or harassment claims under § 1983.

 As for Mr. Kwit and Mr. Owens, they can be liable in their individual capacities under § 1983 if they knowingly, willfully, or recklessly "caused or participated in an alleged constitutional deprivation."[7] *Rascon v. Hardiman,* 803 F.2d 269, 273–74 (7th Cir. 1986) (quoting *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983)). They argue, however, that they did not have the authority to fire Mr. Harding nor did they cause or participate in his termination and thus, they

cannot be liable for any constitutional deprivations related to his termination.

Mr. Kwit was Mr. Harding's supervisor. It is undisputed that Mr. Kwit told Mr. Fuglsang that Mr. Harding left loose ends on projects and failed to finish projects in a timely manner. (12(N) St. ¶¶ 355–56). There is evidence that Mr. Fuglsang consulted with Mr. Kwit to determine whether to fire Mr. Harding and that Mr. Kwit concurred in the decision to fire him. (*Id.* ¶¶ 302–03). Mr. Rosewell testified that quite a bit of weight would have been given to Mr. Kwit's recommendation. (*Id.* ¶ 304). I conclude there is sufficient evidence to go to trial on Mr. Kwit's alleged participation in the decision to terminate Mr. Harding.

Mr. Owens was an assistant general counsel in the Treasurer's Office. Mr. Fuglsang consulted with him in determining whether to fire Mr. Harding. (*Id.* ¶ 302). Although there is evidence that Mr. Owens said that he was "[t]rying to get rid of . . . Harding" (*Id.* ¶ 359), it is undisputed that Mr. Owens did not concur in the recommendation to fire him. (*Id.* ¶ 310). If Mr. Owens disagreed with the decision to fire Mr. Harding, he cannot be held responsible under § 1983 as someone who caused or participated in the decision.

## A. Due Process

 Mr. Harding must have a protectible property interest in his employment to maintain a constitutional procedural due process claim. *Gorman v. Robinson,* 977 F.2d 350, 356 (7th Cir.1992). A constitutionally protected interest arises when a governmental unit gives an employee an assurance of continued employment. *Id.* at 356–57. A provision that an employee can only be discharged for cause is an assurance of continued employment. *Id.* at 357.

---

6. Mr. Harding alleges that Cook County harassed him in that it protested his claim with the IDES claiming that he was discharged for misconduct even though Cook County had not indicated misconduct as the reason for discharge on the IDES claim protest form.

7. Although Mr. Harding brought suit against Mr. Kwit and Mr. Owens in their official capacities, he has not presented any evidence that they were final policymakers in the Treasurer's Office or that they were acting in accordance with an express policy or a well-settled custom of the Treasurer's Office.

■ According to Mr. Harding, the Treasurer's Office had a Personnel Division—General Regulations manual ("Regulations") at the time of his discharge. (12(N) St. ¶¶ 165–66).[8] The Regulations stated that an employee could only be fired for cause and was entitled to a hearing. (*Id.* ¶ 166). Mr. Harding contends that these Regulations gave him a protected property interest in his employment and that the defendants violated his due process rights by firing him without cause and without a hearing.

The defendants respond that the Regulations do not apply because another employee manual ("Doc. No. 890–903") was in effect when Mr. Harding was fired. Doc. No. 890–903 states that it does not govern "exempt status" employees and the defendants contend that Mr. Harding was *Shakman* exempt.[9] The defendants, however, did not produce Doc. No. 890–903 until January 22, 1998, over one year after discovery closed. They claim that they did not produce it because the document was not responsive to any discovery request— Mr. Harding only sought manuals that were applicable to him and Doc. No. 890–903 was not applicable to him, notwithstanding their argument that it directly affects his rights. Mr. Harding should have received Doc. No. 890–903 when he asked for employee manuals. Since he never received it, the defendants are barred from using it in this case. Without Doc. No. 890–903, there is a genuine issue of fact as to whether the Regulations were in effect in October, 1995, and whether Mr. Harding was governed by the Regulations. The defendants are not entitled to summary judgment.[10]

### B. First Amendment

■ To recover on a First Amendment retaliation claim, Mr. Harding must prove that he engaged in constitutionally protected speech and that the defendants retali-

ated against him because of that speech. *Gorman*, 977 F.2d at 354. Mr. Harding has the initial burden of establishing that his speech was constitutionally protected and that the speech was a substantial or motivating factor in the defendants' employment decision. *Conner v. Reinhard*, 847 F.2d 384, 393 (7th Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988). "The burden then shifts to the defendant[s] to prove that [Mr. Harding] would have been discharged even if the protected [speech] had not occurred." *Id.* Mr. Harding alleges that he informed the defendants that employees had been falsifying timesheets and that he cooperated with the FBI in its investigation of the Treasurer's Office and that because of this speech he was harassed and eventually discharged.

### 1. Constitutionally Protected Speech

■ Speech is constitutionally protected if it involves a matter of public concern. *Gorman*, 977 F.2d at 354–55. In determining whether speech is a matter of public concern, the court must look at the content, form, and context of a given statement as revealed by the whole record. *Campbell v. Towse*, 99 F.3d 820, 827 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1254, —— L.Ed.2d —— (1997). Content is the most important of these factors but the court also looks at the point of or motive for the speech. *Id.* If the speech was to further some purely private interest rather than to bring wrongdoing to light, it would not be constitutionally protected. *See, e.g., Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir.1994) (finding that speech on second hand smoke was a matter of public interest but was not protected when made for a person's own interest), *cert. denied*, 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995).

---

8. The General Counsel of the Treasurer's Office in October, 1995, Leo Keryczynskyj, testified that the Regulations appear to be the ones in effect when Mr. Harding was fired. (Keryczynskyj Dep. at 46, 103–04).

9. In *Shakman v. Democratic Organization of Cook County*, No. 69 C 2145 (N.D. Ill. June 29, 1984), Judge Bua entered a consent decree regu-

lating the hiring of employees in the Treasurer's Office.

10. Because I have denied summary judgment on the due process claim, Mr. Harding's motion to strike document number 904–912, which related to the determination of *Shakman* exempt status, is denied as moot.

The defendants concede, as they must, that Mr. Harding's alleged cooperation with the FBI is a matter of public concern and thus constitutionally protected speech. *See Gorman,* 977 F.2d at 355 n .2 (finding that communications with the FBI involve matters of public concern because the public would clearly wish to learn of criminal activities within a governmental organization). They dispute that Mr. Harding's comments about falsifying timesheets are constitutionally protected. Although the subject matter of Mr. Harding's complaints is of public interest—the public would want to know about public employees falsifying time, *see Breuer v. Hart,* 909 F.2d 1035, 1038–39 (7th Cir.1990) (allegations that an employee received pay for work not performed was of public concern)—they argue that Mr. Harding engaged in the speech purely for personal reasons. They state that only after the Treasurer criticized Mr. Harding's work performance did he inform the Treasurer of the alleged false timesheets in order to stop the criticism.

Mr. Harding contests this statement. He testified that he informed the Treasurer and other persons in the Treasurer's Office, on numerous occasions, that Mr. Kwit and Ms. Napientek were falsifying their timesheets. He testified that from 1993, when he was reemployed by the Treasurer's Office, until he was fired in October, 1995, he complained about the false timesheets. (12(N) St. ¶¶ 11, 13, 17, 27). He says he provided this information to the FBI prior to receiving the defendants' criticisms. (*Id.* ¶ 85). This evidence, if true, demonstrates that Mr. Harding was not speaking only for his own personal interest. The credibility of Mr. Harding is a question for the jury.

#### 2. Termination

Mr. Rosewell, Mr. Fuglsang, and Mr. Kwit contend that they are not liable for violating Mr. Harding's first amendment rights be-

cause there is no causal link between Mr. Harding's exercise of protected speech and their decision to discharge him. A review of the evidence indicates that there is a genuine issue of material fact over the causal connection.

On September 5, 1995, Mr. Harding began cooperating with the FBI. (*Id.* ¶ 81). He met with the FBI during his lunch hour on September 5 and 6. (*Id.*). Although the defendants deny that they knew about Mr. Harding's cooperation, there is evidence to the contrary. James Crawley, a former assistant general counsel in the Treasurer's Office, testified in his deposition that Mr. Rosewell blamed Mr. Harding for inquiries by the media and that it was his fault for speaking to the federal authorities.[11] (*Id.* ¶ 93). Mr. Kwit stated that he may have heard rumors that Mr. Harding had spoken to the FBI. (*Id.* ¶ 96). Mr. Harding stated that between September and October, 1995, he had a discussion with Mr. Owens about his cooperation with the FBI. (*Id.* ¶ 102). He also testified that he saw Mr. Fuglsang behind him when he was going to talk to the FBI. (*Id.* ¶ 82). Mr. Fuglsang, when asked if he suspected Mr. Harding of talking to the FBI refused to answer, asserting privilege under the Fifth Amendment. (*Id.* ¶ 101). The jury is entitled to draw an adverse inference that Mr. Fuglsang did know about Mr. Harding's cooperation. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

After September 5, 1995, Mr. Kwit testified that Mr. Harding was required to inform Mr. Kwit of his whereabouts when he took an extended lunch. (Kwit Dep. at 176). On September 14, 1995, Mr. Kwit wrote Mr. Harding a note expressing his concern over not being informed of Mr. Harding's long lunch that day. (12(N) St. Ex. 9). Mr. Rosewell testified that until September, 1995, he trusted Mr. Harding. (12(N) St. ¶ 141). On September 28, 1995, however, Mr. Rose-

---

11. The defendants contend that Mr. Crawley's testimony is inadmissible because his conversations with Mr. Rosewell and other employees in the Treasurer's Office are protected by the attorney-client privilege. The defendants, however, waived the attorney-client privilege by subpoenaing Mr. Crawley for deposition, deposing him, and in the process, disclosing his testimony to third parties. *See Fujisawa Pharm. Co. v. Kapoor,* 162 F.R.D. 539, 541 (N.D.Ill.1995) ("Voluntary disclosure of privileged information about a matter waives the privilege as to all information on the same subject matter.").

well indicated in writing for the first time that he was unhappy with Mr. Harding's work. (*Id.* ¶ 116; 12(M) St. ¶ 17). On October 18, 1995, a meeting was held to discuss Mr. Harding. (12(N) St. ¶ 131).[12] Mr. Rosewell, Mr. Fuglsang, Mr. Owens, Mr. Kwit, Mr. Keryczynskyj, and Martin Lynch, the payroll and personnel director of the Treasurer's Office, attended. (*Id.*). Mr. Harding was fired on October 23, 1995. (12(M) St. ¶ 21). This confluence of events immediately after Mr. Harding commenced his cooperation with the FBI is sufficient to raise a genuine issue of material fact over the causal connection.

Additionally, there is evidence that Mr. Harding informed the Treasurer about false timesheets on numerous occasions from 1993 to October 23, 1995, similarly informed Mr. Fuglsang on February 2, 1995, June 7, 1995, and October 23, 1995, informed Mr. Kwit about the timesheets on numerous occasions from 1993 to early 1995, and so informed Mr. Owens numerous times from 1993 to late 1995. (12(N) St. ¶¶ 11, 13, 17, 27). Mr. Kwit and Mr. Fuglsang admit that Mr. Harding brought timesheet falsification to their attention. (*Id.* ¶¶ 14, 19). Then on October 23, 1995, Mr. Harding delivered a letter to Mr. Rosewell's secretary and to Mr. Keryczynskyj stating that he would inform the Cook County Board of Ethics about the false timesheets unless some action was taken. (*Id.* ¶¶ 145, 148–49). Mr. Keryczynckyj and Mr. Owens went to Mr. Fuglsang's office to show him the letter. (*Id.* ¶ 151). After Mr. Fuglsang read the letter, he said he was going to fire Mr. Harding. (*Id.* ¶ 152). Mr. Harding was fired hours after the delivery of the letter. (*Id.* ¶ 181).

The defendants contend that the gap in time from 1993, when Mr. Harding first complained of false timesheets, until Mr. Harding's discharge in October, 1995, is too large to establish a causal connection. Mr. Harding, however, did not testify to one instance where he complained in 1993, but to numerous complaints over two years. The defendants also contend that Mr. Harding's Octo-

ber 23, 1995 letter does not support a causal connection since the decision to fire Mr. Harding was made prior to that day. There is some question as to when the decision was made. Mr. Rosewell testified that he left it to Mr. Fuglsang to determine whether to fire Mr. Harding and that he did not know when the decision to terminate Mr. Harding was made. (Rosewell Dep. at 26; 12(N) St. ¶ 156). He also testified that he did not know why Mr. Harding was fired. (12(N) St. ¶ 261). Mr. Kerczynskyj and Mr. Owens testified that after Mr. Fuglsang read the letter on October 23, he stated that Mr. Harding was fired. (*Id.* ¶ 152). Mr. Keryczynskyj further stated that he was surprised to hear that because Mr. Rosewell had indicated that he did not want to terminate Mr. Harding. (*Id.* ¶ 204). The timing of Mr. Harding's termination after the delivery of the letter and the conflicting testimony create a fact question for the jury on the causal connection between the letter and termination.

In the alternative, the defendants state that even if there is some connection, they have articulated a legitimate reason for firing Mr. Harding. Mr. Fuglsang testified that in his opinion, Mr. Harding did not cooperate with his supervisors, was unable to complete or adequately perform assignments, did not follow instructions, had problems with his attendance, and did not inform his supervisors of his whereabouts. (12(M) St. ¶ 15). Mr. Rosewell testified that in his view, Mr. Harding was not happy with the Treasurer's Office and was always complaining. (*Id.* ¶ 16). He had been advised of Mr. Harding's lack of cooperation. (*Id.*). He lost trust in Mr. Harding because he felt that Mr. Harding was trying to place a wedge between him and Mr. Fuglsang and because Mr. Harding demanded an increase in salary. (*Id.* ¶¶ 16, 18).

The defendants have not sufficiently demonstrated that Mr. Harding would have been discharged even if the protected speech had not occurred. There is a notable absence of documentation of problems with Mr. Harding

---

12. The defendants object to this evidence on the ground that it is derived from an October 30, 1995 Memorandum which is protected by the attorney-client privilege. Judge Pallmeyer found, however, that the defendants waived their attorney-client privilege with respect to that Memorandum. (Order, June 27, 1997).

prior to September, 1995. Furthermore, when Mr. Harding was fired, he was not given any reason for his termination other than that his services were no longer needed. (*Id.* ¶ 179, 194).

### 3. Harassment

 Mr. Harding alleges that Mr. Rosewell, Mr. Fuglsang, Mr. Kwit, and Mr. Owens harassed him because of his speech by (1) withholding wages or other compensation, (2) preparing false criticisms of his job performance, (3) altering, destroying, or withholding personnel records, and (4) intentionally subjecting him to cigarette smoke when they knew he was allergic to smoke. The defendants contend that they are entitled to summary judgment on three separate grounds. First, they argue that none of the alleged harassment constitutes an adverse employment action. The Seventh Circuit has held, however, that a campaign of petty harassment in response to a public employee's exercise of protected speech is actionable under § 1983 unless the harassment is so trivial that the employee would not have been deterred from speaking. *Wallace v. Benware*, 67 F.3d 655, 663 (7th Cir.1995). The totality of the acts alleged by Mr. Harding constitute petty harassment that is not trivial.

Second, the defendants contend that they did not all participate in each act of harassment. This argument, however, does not eliminate the defendants' potential liability in its entirety. Each defendant is still liable for his separate acts that are sufficient in themselves to be harassing.

Finally, the defendants contend that there is no causal connection between Mr. Harding's exercise of protected speech and each harassing event. Although Mr. Harding has not presented any evidence that the defen-

dants deliberately subjected him to smoke in retaliation for his exercise of protected speech,[13] there is a genuine issue of material fact as to the causal connection for the other harassing acts. Mr. Lynch testified that Mr. Fuglsang told him not to pay Mr. Harding for compensatory time.[14] (12(N) St. ¶ 348). Mr. Lynch further testified that employees were routinely paid for their time and that Mr. Fuglsang had never instructed him in the past not to pay someone for time upon termination. (*Id.* ¶¶ 350–51).

Furthermore, it is undisputed that Mr. Kwit initially had a good working relationship with Mr. Harding. (*Id.* ¶ 8). Mr. Harding then brought the timesheet falsification to Mr. Kwit's attention and Mr. Kwit became upset over the accusations. (*Id.* ¶¶ 14–15). Mr. Harding was told by Mr. Owens that Mr. Kwit was going to go after him and harass him. (*Id.* ¶ 105). Mr. Kwit thereafter allegedly falsely criticized Mr. Harding's work performance. Donna Echevaria, a co-worker who worked closely with Mr. Harding, testified that she observed a change in Mr. Kwit's treatment of Mr. Harding around February, 1995. (Echevaria Dep. at 65). She observed that Mr. Kwit was looking to reprimand Mr. Harding, (12(N) St. ¶ 71), yet she never observed Mr. Harding engage in misconduct, (*Id.* ¶ 73). She saw him help others in the office and never saw him refuse anyone assistance. (*Id.*).

Finally, Mr. Harding testified that he requested that certain documents be placed in his personnel file but that some of those documents relating to his harassment and complaints were missing from the file. There is evidence that Mr. Owens had requested Mr. Harding's personnel file. (*Id.* ¶ 358). Mr. Crawley stated that he saw Mr. Owens with Mr. Harding's personnel file one week before Mr. Harding was fired. (Craw-

---

**13.** Mr. Harding testified that he was allergic to smoke and was subjected to smoke in retaliation for his complaints. Mr. Kwit admits that Mr. Harding told him about the allergy and complained about cigarette smoke and that he did not respond to Mr. Harding's complaints. (12(N) St. ¶¶ 368, 371–72). It is unclear, however, when these incidents occurred and whether there was a difference in the level of smoke before and after Mr. Harding complained about false timesheets. Without more, I cannot find a causal connection between the defendants' smoking and Mr. Harding's exercise of protected speech.

**14.** The compensatory time in question appears to be overtime that Mr. Harding accrued during his tenure at the Comptroller's Office that was not paid by that Office but which the Treasurer's Office agreed to pay.

ley Aff. ¶ 4). Mr. Owens said that he was "trying to get rid of that asshole Harding" and make him jump through every bureaucratic hoop to get his file. (*Id.*). A jury could infer that Mr. Owens improperly removed the documents to eliminate Mr. Harding's documentation of his harassment.

### Counts II and III

■ In Counts II and III, Mr. Harding alleges retaliatory discharge and harassment against Cook County and against Mr. Rosewell, Mr. Fuglsang, Mr. Kwit, and Mr. Owens in their individual and official capacities under Illinois law. He alleges that they harassed him and discharged him because he reported suspected criminal and ethics violations (Count II) and because he filed a workers' compensation claim (Count III).

■ As an initial matter, Mr. Harding's claims of retaliatory harassment must be dismissed since Illinois does not recognize such a claim. *See Veit v. Village of Round Lake Park*, 167 Ill.App.3d 350, 521 N.E.2d 145, 147, 118 Ill.Dec. 77, 79 (2d Dist.1988) (refusing to extend tort of retaliatory discharge to include a cause of action for retaliatory harassment); *accord United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 146–47 (N.D.Ill.1993).[15] As for his retaliatory discharge claim, the only proper defendant is his former employer, the Treasurer's Office. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 694 N.E.2d 565, 570, 230 Ill.Dec. 596, 601 (1998).[16]

■ To state a claim for retaliatory discharge under Illinois law, Mr. Harding must show that (1) he was discharged, (2) in retaliation for his activities, and (3) the discharge violated a clear mandate of public policy. *Hartlein v. Illinois Power Co.*, 151 Ill.2d 142, 160, 601 N.E.2d 720, 728, 176 Ill.Dec. 22, 30 (1992). "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Id.* The defendants contend that Mr. Harding cannot show that he was discharged in retaliation for reporting the false timesheets, for cooperating with the FBI, or for filing a workers' compensation claim and that there was a legitimate reason for firing him.

As discussed above in Count I, there is a genuine issue of material fact as to whether Mr. Harding was discharged because he reported false timesheets and because he cooperated with the FBI. This makes summary judgment on Count II inappropriate.

■ Summary judgment on Count III is also inappropriate. Mr. Crawley testified that Mr. Rosewell asked him if he could get rid of someone for filing a false workers' compensation claim and that Mr. Fuglsang said "I wish you'd fire the son-of-a-bitch," referring to Mr. Harding. (12(N) St. ¶¶ 382, 384). Mr. Rosewell also indicated in his memorandum to Mr. Harding on September 28, 1995 that he was unhappy with the 60.5 sick days used by Mr. Harding after his fall. (12(N) St. Ex. 12). Based on these statements, a jury could infer that the Treasurer's Office fired him in retaliation for filing his workers' compensation claim even though the discharge came six months after the workers' compensation claim. *See Netzel v. United Parcel Serv., Inc.*, 181 Ill.App.3d 808, 537 N.E.2d 1348, 1351, 130 Ill.Dec. 879, 882 (1st Dist.1989) ("[W]here an employee can prove that the employer's motive was retaliatory for the exercise of his rights under the [Workers' Compensation] Act, despite the passage of time, he is entitled to a recovery."). The statements were made by the persons who had the authority to fire Mr. Harding and they provide evidence of pretext.

---

**15.** *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 645 N.E.2d 888, 206 Ill.Dec. 636 (1994), does not assist Mr. Harding because it does not create a cause of action for retaliatory harassment. It discusses civil conspiracy which is not a claim in Mr. Harding's complaint.

**16.** *Buckner* overrules the two Second District cases Mr. Harding relies on which support supervisor, agent, or employee liability: *Fellhauer v. City of Geneva*, 190 Ill.App.3d 592, 546 N.E.2d 791, 137 Ill.Dec. 846 (1989), *rev'd on other grounds*, 142 Ill.2d 495, 568 N.E.2d 870, 154 Ill.Dec. 649 (1991) and *Bragado v. Cherry Elec. Prods. Corp.*, 191 Ill.App.3d 136, 547 N.E.2d 643, 138 Ill.Dec. 476 (1989).

*Count IV*

In Count IV, Mr. Harding alleges that Mr. Rosewell, Mr. Fuglsang, and Mr. Zobjeck slandered him by speaking false and defamatory words to the effect that he "had fabricated an injury for which he was claiming worker's compensation benefits, and that [he] was trying to defraud Cook County by making a false claim for worker's compensation benefits." (First Am. Compl. ¶ 50). The defendants contend that this count should be dismissed because Mr. Harding has not identified the specific words that form the basis of his slander claim. Although this district applies the precise language requirement in defamation actions, *Vantassell–Matin v. Nelson,* 741 F.Supp. 698, 707–08 (N.D.Ill.1990), the purpose of the requirement is to give the opposing party notice of the words alleged to be actionable so that it can form a responsive pleading. This case, however, has proceeded far beyond the pleading stage. The defendants, through discovery, have been given all the notice required of the alleged defamatory statements. Specifically, the defendants discovered that Mr. Crawley heard Mr. Rosewell say that Mr. Harding had filed a false workers' compensation claim (12(N) St. ¶ 386), heard Mr. Zobjeck say that Mr. Harding had filed a false workers' compensation claim, had faked injury, and was trying to bilk the County (*Id.* ¶¶ 387–88), and heard Mr. Fuglsang say that Mr. Harding had fabricated the injury, that the injury occurred at home, and that Mr. Harding was trying to make money off the County (*Id.* ¶ 389).[17]

Under Illinois law, "[a] statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [him]." *Bryson v. News America Publications, Inc.,* 174 Ill.2d 77, 672 N.E.2d 1207, 1214, 220 Ill.Dec. 195, 202 (1996). A statement may be defamatory on its face and thus actionable per se even though the plaintiff has not pled or proved actual damage to his reputation. *Id.* Four categories of statements are considered defamatory per se: (1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; and (4) words that prejudice a party, or impute lack of ability, in his trade, profession, or business. *Id.,* 672 N.E.2d at 1214–15, 220 Ill. Dec. at 202–03. These statements still may not be actionable if they are reasonably capable of an innocent construction, *id.,* 672 N.E.2d at 1215, 220 Ill.Dec. at 203, or are constitutionally protected opinion, *id.,* 672 N.E.2d at 1219, 220 Ill.Dec. at 207.

These statements are defamatory per se because they impute the criminal offense of insurance fraud to Mr. Harding. *See* 720 ILCS 5/46–1 (insurance fraud is a criminal offense in Illinois). They are not capable of an innocent construction. Furthermore, the statements are not constitutionally protected opinion. A statement is constitutionally protected speech only if it cannot be "reasonably interpreted as stating actual facts." *Id.,* 672 N.E.2d at 1220, 220 Ill.Dec. at 208 (quoting *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)). The defendants' assertions, that Mr. Harding had filed a false workers' compensation claim, were sufficiently factual to be susceptible to being proven true or false. *Id.,* 672 N.E.2d at 1220, 220 Ill.Dec. at 208.

Finally, Mr. Rosewell and Mr. Fuglsang argue that they are not liable for any of the alleged defamatory statements because they possess a qualified privilege or have absolute immunity. Both absolute immunity and qualified privilege are affirmative defenses that need to be raised in the defendants' answer. The defendants did not raise them in their answer and seek to amend their answer pursuant to Federal Rule of

---

17. The defendants again object to Mr. Crawley's statements on the grounds of attorney-client privilege. As noted above, that objection has been waived. In addition, the defendants contend that the statements Mr. Crawley heard are inadmissible hearsay. Mr. Harding, however, is not offering Mr. Crawley's testimony for the purpose of establishing the truth of the statements but to prove that those statements were in fact made.

Civil Procedure 15(a) and (b). They state that the complaint did not describe the context of the alleged defamatory statements and that only after discovery did they realize that Mr. Rosewell and Mr. Fuglsang allegedly made those statements while seeking legal advice in exercising their official duties. The defendants never explained, however, why they waited until 15 months after the close of discovery to seek amendment.

 Mr. Harding responds that discovery ended in January, 1997 and that he will be prejudiced by the amendment because he has not taken any discovery on the issue of either qualified privilege or absolute immunity. There was discovery on Mr. Rosewell's and Mr. Fuglsang's official duties but it is unclear whether it fully covered the issues relating to Mr. Harding's slander claim. For example, both Mr. Rosewell and Mr. Fuglsang stated in their depositions that they had nothing to do with workers' compensation claims. (12(N) St. ¶¶ 396–97). If they had nothing to do with those claims, their statements that Mr. Harding had filed a false workers' compensation claim may not be within the scope of their official duties [18] and may not be privileged.[19] In their response to Mr. Harding's 12(N) Statement, however, they seek to clarify their statements by stating that they were not involved in the processing of workers' compensation claims. (12(N) Resp. ¶¶ 396–97). They argue that because the Treasurer controlled the internal operations of his office, examining workers' compensation claims was clearly within his purview. If I allow the amendment, the defendants would be able to clarify away their deposition statements without ever giving Mr. Harding the opportunity to explore that issue. More discovery would be needed, but since discovery closed over 16 months ago and the pretrial order in this case has already been filed, I decline to allow amendment and reopen discovery. Accordingly, summary judgment on these grounds is denied.

### Count V

 In Count V as amended, Mr. Harding alleges that the Treasurer's Office and Cook County breached its contract with him by failing to pay him for accrued compensation and vacation time.[20] Cook County moves for summary judgment on the ground that as a matter of law, Mr. Harding was employed by the Treasurer's Office and that it is not liable for the Treasurer's failure to pay Mr. Harding because the Treasurer is a separately elected county officer.

In *Moy v. County of Cook,* 159 Ill.2d 519, 640 N.E.2d 926, 927, 203 Ill.Dec. 776, 777 (1994), the plaintiff filed a three-count complaint alleging that Cook County, through the acts of its sheriff, its department of corrections, its directors and its employees, was liable for the failure to provide medical care and to properly train and supervise jail staff. The Illinois Supreme Court affirmed the dismissal of the case against Cook County. *Id.* It found that Cook County could not be liable under respondeat superior for the actions of the county sheriff and persons employed by the county sheriff because Cook County had no right to control the sheriff's actions. *Id.,* 640 N.E.2d at 928–29, 203 Ill.Dec. at 778–79. The sheriff's duties and obligations were imposed by statute. *Id.,* 640 N.E.2d at 929, 203 Ill.Dec. at 779. The sheriff was responsible for hiring and training his personnel. *Id.* Furthermore, the county sheriff was a county officer and not an employee of the County, and thus the doctrine of respondeat superior was inapplicable.[21] *Id.,* 640 N.E.2d at 930, 203 Ill.Dec. at 780.

---

**18.** Government officials have absolute immunity for statements made in the exercise of their official duties. *Morton v. Hartigan,* 145 Ill.App.3d 417, 495 N.E.2d 1159, 1163–64, 99 Ill.Dec. 424, 428–29 (1st Dist.1986).

**19.** There is no defense if there is an abuse of the qualified privilege. An abuse "may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to

only the proper parties." *Kuwik v. Starmark Star Mktg. & Admin., Inc.,* 156 Ill.2d 16, 619 N.E.2d 129, 136, 188 Ill.Dec. 765, 772 (1993).

**20.** *On February 19, 1998, Judge Pallmeyer granted Mr. Harding's motion to amend Count V to add the Treasurer's Office.*

**21.** A county officer is one (1) whose position is created by law, (2) his compensation is required to be fixed by the county board and paid out of

The facts of this case are analogous to those in *Moy*. The Treasurer is a separately elected county officer.[22] Cook County does not control the operations of the Treasurer's Office but rather "[t]he treasurer shall control the internal operations of his office and procure necessary equipment, materials and services to perform the duties of his office." 55 ILCS 5/3–10005.1. He appoints his deputies, assistants, and personnel to assist him in the performance of his duties. 55 ILCS 5/3–10005. He fixes the compensation for his deputies and employees. 55 ILCS 5/3–10005.4. Cook County does not decide whether Mr. Harding is entitled to compensation and thus, cannot be liable for denying entitlement to such compensation.

Mr. Harding attempts to distinguish this case from *Moy* on four grounds. First, he argues that *Moy* involved a tort claim. The fact that *Moy* involved a tort action is irrelevant since the nature of the action does not change the determination of an employment relationship. Second, he states that *Moy* related to the issue of the sheriff's employment not those under him. In *Moy*, however, the plaintiff was suing Cook County based on actions by employees of the County Jail. If those employees were employed by Cook County, it would be liable and there would be no need to determine whether Cook County was responsible for the sheriff's actions. By discussing the relationship between the sheriff's office and Cook County, the court implicitly found that the employees were employees of the sheriff and the only way Cook County could be responsible for their actions is to determine the relationship between the sheriff and Cook County. Third, Mr. Harding claims that his compensation is paid by the County. *Moy* rejected compensation as a determining factor in examining the employment relationship. 159 Ill.2d 519, 640 N.E.2d at 929, 203 Ill.Dec. at 779. Finally, Mr. Harding states that he is governed by County ethics ordinances. The fact that Mr. Harding was subject to ethics ordinances

the county treasury, (3) he exercises some portion of the sovereign power of the State, (4) his duties are not prescribed by contract or agreement but by law, and (5) he is not engaged to perform a special act, the completion of which ends his duties, but the duties are continuous, without regard to the particular person who

does not mean that Cook County exerted such control over him that it should be considered his employer. Mr. Harding has therefore failed to distinguish *Moy*.

### Conclusion

The defendants' motion for summary judgment is granted in part and denied in part as set forth in this opinion. The defendants' motion to strike 12(N) paragraphs is denied, their motion to file their answer *nunc pro tunc* is granted, and their motion to amend their answer is denied. Mr. Harding's motion to strike document number 904–912 is denied as moot and his motion to bar the use of document number 890–903 is granted.

holds the office. *Id.*, 640 N.E.2d at 930, 203 Ill.Dec. at 780.

**22.** The Treasurer's Office, like the sheriff, is created by article VII of the Illinois Constitution. Ill. Const. art. VII, § 4(c).